IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| L M, Plaintiff, | ) | 2018MR000302 |
| vs. | ) | No. 18-MR- |
| SOUTHERN ILLINOIS UNIVERSITY AT EDWARDSVILLE (SIUE) and RANDALL G. PEMBROOK, in his official capacity as Chancellor of SIUE, Defendants. | ) | |

**SUMMONS**

**TO: Southern Illinois University at Edwardsville, (serve Chancellor), Office of the Resgistrar, Rendleman Hall, Room 1207, 6 Hairpin Drive, Edwardsville, IL 62026**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the petition.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

David A. Hylla, the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this 25th day of July, 2018.

/s/ Mark Von Nida
Clerk of the Circuit Court

XXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXT

/s/ Melodie Smith

BY: ______________________
Deputy Clerk

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

ERIC M. RHEIN
ERIC M. RHEIN, P.C.
6897 WEST MAIN STREET
BELLEVILLE, IL 62223-3028

Date of Service: 8-2, 2018.
(To be inserted by officer on the copy left with the defendant or other person)

EXHIBIT
tabbies
A

***EFILED***
Case Number 2018MR000302
Date: 7/23/2018 4:34 PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| L M, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 18-MR- |
| | ) | |
| SOUTHERN ILLINOIS UNIVERSITY AT EDWARDSVILLE (SIUE) and RANDALL G. PEMBROOK, in his official capacity as Chancellor of SIUE, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, L M, by counsel, Eric M. Rhein, Esq., and for his Complaint against the Defendants, Southern Illinois University at Edwardsville (SIUE) and Randall G. Pembrook, in his official capacity as Chancellor of SIUE, he states unto the court as follows:

I. PARTIES

1. Plaintiff, L M, is an individual who has been a student at Defendant, SIUE. He is male.

2. Defendant, SIUE is a general academic teaching institution formed by the Illinois Legislature. Defendant Pembrook is Chancellor at SIUE. Defendants do business in Madison County, Illinois.

II. INTRODUCTION

3. This action seeks to overturn and nullify the findings by Defendants that Plaintiff had sexually assaulted the Complainant(referred to as "C M") off the SIUE campus on October 15, 2017. It also seeks to enjoin Defendants from disciplining L M based on a flawed and unlawful process, and seeks to enjoin them from using obviously unconstitutional and illegal sexual harassment "Policies and Procedures" in the future; he also seeks a declaratory judgment that the "Policies and Procedures" do not comport with basic due process under the Fourteenth Amendment to the United States Constitution, and that they violate the federal Title IX anti-gender discrimination law. The names of Plaintiff and the Complainant have not been identified in order to protect their privacy.

FACTS COMMON TO ALL COUNTS

4. For many months prior to October 15, 2017, the Plaintiff and Complainant (a female) had what Complainant has referred to as an "F Buddy" or strictly sexual relationship. They did not have a romantic relationship and never went on a formal "date." They consented as adults to a relationship based only on having sex.

5. On October 15, 2017, in the early morning hours, off campus, C M came over to Plaintiff's apartment; the parties began drinking alcohol and had sex that morning three times. Plaintiff

has consistently maintained that each time was consensual and not forced. Complainant has claimed (falsely, as even SIUE's Sexual Harassment Panel found on June 4, 2018, when it found that in fact she HAD consented to the second and third sexual encounters; in other words, even SIUE has found that C M's versions of significant events in this case were not true, because if she HAD been truthful, SIUE would have necessarily found Plaintiff guilty - civilly - of having assaulted C M all three times, not just the first time; also, the court should be mindful that SIUE has found, quite incredibly so, that C M consented - TWICE - to having sex with a man who had allegedly raped her during their first encounter on October 15, 2017) that she had not given valid consent to any of the October 15 sexual encounters. It has been Plaintiff's belief that C M claimed that she had been raped in retaliation for L M not wanting to have a romantic relationship with her.

6.  At no time, including after she was supposedly assaulted the morning of October 15, did C M ever call the Edwardsville Police, SIUE Police, or Illinois State Police to report having been raped. She also did not seek treatment at any medical facility on October 15, 2017. The reason for C M's behavior was that she knew she had not been raped.

7.  C M first claimed to SIUE authorities that she had been sexually assaulted a month after October 15, 2017; the SIUE investigation did not begin until April of 2018.

8. On April 25, 2018, a female investigator of SIUE, Associate Dean Shustrin, issued a written investigatory report, titled "Investigation report with finding with [sic] analysis." Basic facts such as the date the investigation commenced are not contained in the report. No explanation is given for C M's late report of alleged sex abuse.  Shustrin found that "[t]he investigation does not support a determination that there was non-consensual sexual intercourse at approximately 10:00 a.m. [on October 15, 2017]." However, L M was found by the "investigator" to have had sex with C M at a time when, due to her ingestion of alcohol, she was not able to give knowing consent to sex, and that L M should have known that (even though he was also intoxicated).

9. As described in paragraph 5 above, the Sexual Harassment Panel disagreed with the investigator's finding that the sex the parties had at 4:00 a.m. that morning was non-consensual.

10. L M has consistently cooperated with the SIUE investigation and has not taken refuge behind the Fifth Amendment to the Constitution, which was his right.

11. However, as the court will see, SIUE's sex harassment "Policies and Procedures" (attached to this suit as Exhibit One

and Two) for investigating possible sex harassment on or off campus do not recognize or account for an accused's right to not cooperate or to refuse to answer questions posed by a government investigator. This means that an accused who remains silent will be found guilty.

12. The "policies and procedures" also do not mandate that the school or its employees notify police that the school has found one of its students has committed sexual assault.

SIUE's regulations do not even protect the identities of the parties involved (though Plaintiff has done so in this lawsuit).

13.   L M timely gave notice to the school that he was appealing the investigator's first two (guilty) findings, and the school's Sexual Harassment Panel, composed of two female employees and one male employee, held a hearing with live testimony on May 18, 2018. No independent occurrence witnesses were called, except for C M & L M.

14. At no time did C M appeal the finding that she consented to have sex with Plaintiff at 10:00 a.m. on October 15, 2017.

15. Prior to the hearing, L M's counsel filed his Motion to Dismiss the charges. The Panel never ruled on the Motion; instead, they ignored it.

16. At the May 18 hearing, L M brought counsel, and C M was not represented by a lawyer. Plaintiff believes that one of SIUE's staff lawyers was present during the afternoon long

hearing.

17. L M's lawyer was not - in accordance with the school's "Policies and Procedures" - permitted to utter a word at the hearing, was not allowed to conduct a direct examination of his client and was not allowed to cross examine C M or her other witness (her current boyfriend).

18. Instead, the rules allowed counsel to submit written questions for C M in advance, questions that the panel read to C M, but did not follow up on.

19. Also, the Panel asked three part questions all at once of C M, instead of asking them one at a time; thus, often, she was not required to answer each sub-question.

20. Any licensed attorney, permitted to do his or her job at a contested hearing, would have never done that; instead, counsel - allowed to be more than a potted plant at the hearing - would have noted other questions to ask as the Complainant had given her direct testimony, questions that no lawyer could have anticipated just by reading her prior statements.

21. In short, the rules governing the conduct of the hearing did not allow for effective or meaningful confrontation of the witness, in violation of L M's Sixth and Fourteenth Amendment rights.

22. On June 4, 2018, the Panel issued its "Sexual Harassment Panel Appeal Hearing Report of Findings."

23. The Panel found L M guilty of sexual harassment of C M the first time the parties had sex (2:00 a.m. on 10/15/17), and found him innocent of having raped C M at 4:00 a.m. and at 10:00 a.m.

24. In other words, the Panel has necessarily found that C M had consensual sex with her "rapist" two times after she originally "raped." Such a finding is not logical and is non-sensical. It does not comport with basic notions of due process.  It has no rational basis.

25.  L M appealed the Panel's finding to the Chancellor and on June 19, 2018, the Defendant, Chancellor Pembrook, upheld the Panel's decision to discipline L M. He also specially found that "The University's Sexual Harassment Complaint Procedures do not call for filing motions to dismiss, and therefore, the Motion to Dismiss filed by the Respondent was not considered." Finally, the Chancellor found that L M "has received all due process rights afforded by University policy."

26. Note that Defendant Pembrook did not write that "your client has received all of his due process rights called for by the Constitution." The U. S. Constitution and its Amendments DO apply to SIUE's sexual harassment policies and procedures, because SIUE is a state sponsored and state owned institution, and state action under the Fourteenth Amendment is implicated.

27.  The Motion to Dismiss brought to the attention of the SIUE Panel and Chancellor infirmities with the school's sex harassment policies and procedures. This is the Motion the school refused to consider. That itself is a constitutional violation.

28.  The Motion to Dismiss, ignored by defendants, brought to the attention of SIUE the following substantive arguments concerning the unfairness of and flaws in the sex harassment "Policies and Procedures."

29. On the merits, the April 25 Investigation report and findings did not contain facts which support a conclusion that, by a preponderance of the evidence, the Respondent knew or should have known that C M was not capable of giving consent to voluntary sexual activity on the morning at issue.

30. On the merits, there was no credible proof by a preponderance of the evidence that C M did not give lawful consent to sexual activity with L M on the morning at issue. In fact, the credible evidence is that C M DID give consent and did not believe that she had been raped, because she did not act like a person who has been raped.

31. SIU-E's Sexual Harassment "Policies & Procedures" (2C5 & 3C4) contain provisions that have no rational basis, that violate the accused's right to be treated fundamentally fair by his government (SIU-E is a government owned and managed institution), that violate his rights under the United States Constitution,

such as his Fifth Amendment right to remain silent, his Sixth Amendment right to meaningfully confront his accuser, his right to equal protection of the laws and to due process of law, under the Fourteenth Amendment, and which are not narrowly tailored to further the compelling state interest of deterring and punishing sexual misconduct on campus, to wit:

A. The policies do not have any way to punish breaches of confidentiality, and there are no sanctions described in the procedures to punish, for example, a losing complaining witness for making public her accusations on social media against an innocent Respondent.

B. Also, no sanctions can be imposed if a losing Respondent chooses to make his complaints with the "policies and procedures" public.

C. Finally, there is no policy requiring all results of the complaints to be confidential. A preference for confidentiality is in the rules, to be sure, but there are no enforcement mechanisms. There should be.

D. The rules are also fatally flawed in that they may be read as protecting a guilty actor from being punished criminally, and that's not rational.

E. The school has no authority to exercise jurisdiction (see "II. Scope of Policy") as to off campus activities, where the civil and criminal laws of the state of Illinois exist to protect people from sexual assault and to punish perpetrators.

F. Plaintiff notes that the state law criminal penalty for Aggravated Criminal Sexual Assault (a crime which used to be called "rape") is severe: a minimum six to thirty years in prison.

G. Despite the significantly lower penalties for violation of the school's sex harassment policies, the accused has less rights than an accused rapist charged with probable cause. The accused's rights here should be the same: the right to have counsel actually participate openly in the proceedings, the right to be silent, the right to receive written notice of the Complaint, the right to effectively cross examine the accuser, in the presence of the accused, the right to compel witnesses to appear and to be questioned, the right to make a closing argument, and the right to some kind of reasonable statute of limitations (there is none at SIU-E).

H. Finally, the accused has the right not to have all of the rules and procedures and policies weighted heavily in favor of the accuser. The rules should be fair and even handed, without regard to a preferred result, and the rules must comport with

procedural and substantive constitutional equal protection and due process precepts.

I. These are serious charges L M faced and the policies and procedures must comport with the law. SIU-E is not a law unto itself. The state legislature sets the procedures and penalties for sex assault.  SIUE's rules do not trump the Constitution.

J. That said, if SIU-E's rules mirrored those of the criminal law, but with a lower (civil) standard of proof, Respondent concedes that such a system would be lawful.

K. The policies and procedures are needlessly complex; they should be simple, and written in plain language, so any student can understand them.

L. V B 4 and VI B 2 allow for a lawyer to be present for an accused (by the way, there should be no barrier for an accuser to be represented by an attorney, who can question her or him and seek to protect her client during cross examination, a cross examination that under these policies does not exist, at least in an adversarial sense).

M. The entire 287 year theory of the constitutional adversary system of justice in America is that effective cross examination brings out truth, a theory wholly and unjustly abandoned by SIUE, for whatever reason, by mandating that a lawyer say nothing at the hearing, unless the lawyer is going to testify. That's irrational and violates fundamental fairness. In

fact, it shocks the conscience. Why SIU-E developed this rule is unknown, but the obvious effect of this rule is to allow Complainants' versions of event to go largely unchallenged and untested by a true adversary system, or by a lawyer whose interest is to represent the interest of her client. The fact is that many accusers lie, and that many accused persons lie, and only by effective cross examination can lies be revealed, and justice done.

N. V F and V B 3 do not allow for the accused to confront and cross examine his accuser directly. Instead, in sexual violence cases (L M denies that the allegations here show sexual violence, a term that is undefined in the "Procedures"), the rules require the accused to submit his intended questions to the panel chair, and because he can be barred from the room when the Complainant is questioned, unless a court reporter keeps a transcript of the proceedings, he or she will never know if the panel chair deigned to ask the questions he proposed, or followed up on them.

O. Asking follow up questions to answers to written questions is key, because the variation of answers a witness can give to a simple question are too numerous to describe.

P. So the only way this process in this case can be fair would be for the accused's lawyer to cross examine the witnesses.

Q. The reason why the accused should be present is so he or

she can hear the accuser's testimony and give counsel information with which to further question her. Also, the accuser should testify first in the Respondent's presence, so he knows what he has to rebut, if anything.

R. So if Respondent hears the testimony of the alleged victim live, it puts him or her in the position of agreeing with all or part of the accuser's version of the events, or pointing out areas of disagreement.

S. Instead, L M was called by the panel as a witness first, before C M was called.   There is no presumption of innocence contained in SIUE's rules.

T. SIU-E's procedures are irrational; they make no sense. They also make no sense is a non-sexual violence case, where the accused may be allowed to directly question his alleged victim. That can't possibly be sensitive to the alleged victim.

U. But, once again, competent and experienced attorneys representing either side often know how to bring out facts without offending or embarrassing alleged victims, and that would be a sound and rational policy position for SIU-E to have. But it doesn't. That's irrational and counter productive and does not protect a truth telling victim from being victimized again in the board room. This policy is indefensible.

V. There is no evidence that the panel members, while being highly educated, are trained and experienced cross examiners.

They were not trial lawyers.  And how can they be "objective" when they have been provided with the Investigator's conclusion of guilt in advance of the hearing? Plaintiff's right to neutral and detached fact finders has been violated.

W. V F does not allow for any meaningful cross examination of the alleged victim. It allows for only the presentation of witnesses and evidence.

X. V B 4 is one of the most blatant and illegal parts of the "Procedures." It chooses not to recognize the accused's Fifth Amendment right as an accused to stand silent and not testify in the proceedings. The rules state that he or she "is responsible for participating in the investigatory process." It is hard to believe that the lawyers for the school who devised or approved these rules are so ignorant of basic constitutional protections. Willfully ignorant, it seems.

Y. Compelled testimony of the accused is simply Soviet style "justice," which is no justice at all. This process is designed to be a road to conviction and punishment; it is not an even handed and fair search for what is true.

Z. So if an accused wants to put his accuser to the test of the crucible of cross examination by a competent lawyer, if he or she wants to remain silent and make the complaining witness make his or her case, he cannot do that at SIU-E. He must - if he wants to remain a student there - give the school investigator a

statement, a statement that without doubt could be subpoenaed by local prosecutors or police to make a case to take the liberty of the accused.  Plaintiff was also called by the panel as its first witness.  Had he refused to testify, he would have been deemed a "non-cooperator" and would have been found guilty.

AA. SIU-E, however, is part of the United States, and constitutional law and civil rights trump this process, especially because a truly fair and just system of rules could have been devised. But that system does not exist at SIU-E. Instead, with these "rules" in place, the path to finding all alleged victims credible is clear. And the fact is not all who claim sex assault are credible, as the court can see in the case at bar.

BB. Under rule V, there is no requirement that a Complaint be in writing. The rules do not allow for fair notice to the accused as to what the allegations against her or him are.

CC. Under rule V J, the accused only has five days to appeal. This time period is mandated throughout the rules. Such a period is too short and is not fair. Especially because if the accused seeks the counsel of a busy lawyer, he or she may not be able to meet the deadline for filing an effective appeal. Respondent submits that these short time limitations are assigned to disfavor the accused and to favor the process and the accuser. They are irrational and unfair. Even convicted rapists have

thirty days to appeal, under state law.

DD. As to the make up of the SHP (the panel), rule VI A states that there shall be "gender equity representation." This term goes undefined.

EE. Does it mean that the three person panel cannot be weighted toward a male accused? Does it mean that C M has a right to have two women on the panel? She did.

FF. All this is sexist, because it stereo-typically assumes that a panel member of a certain gender will always vote for the side with whom they share a gender.

GG. In fact, there was one male on Plaintiff's panel, and two females.

HH. While the Fourteenth Amendment certainly prohibits sexual discrimination in adjudications (a laudable and entirely legal concept), the "gender equity representation" clause is undefined and makes no sense.

II. Respondent would note that many prosecutors of rape defendants would like to see many men on the jury, thinking that sometimes men are more protective of some victims, while female jurors may be too judgmental of the conduct of some female alleged victims.

JJ. So the sensible and fair way to select a panel of three from the whole group of twelve would be to have six men and six women on the panel of twelve and then randomly select three to

sit on a given case, without regard to gender. Like with race, government must be color blind when it comes to gender, and not favor one over another, as all are equal.

KK. There is no compulsory process or any way to subpoena witnesses. Such a fact could be cured by the simple filing of a civil case in the Circuit Court by the school against a Respondent. But then all civil rules of basic due process would apply, and the faculty of the University would lose control of the process, something they obviously have no intention of doing.

LL. Rule VI B 4 does not allow a person accused of sexual violence to confront and cross examine his accuser. Once again, with counsel truly involved, a layer of protection would be given the accused, the accuser and to the process. Once again, "sexual violence" is not defined.

MM. "H" and "XI" are attempted "savings clauses" and state that "substantial compliance [undefined] with these procedures shall be deemed full compliance if the party challenging the procedures has suffered no substantial harm caused by the actual process used."

NN. First, this seems to be an acknowledgment by SIU-E that school officials KNOW that these procedures are unlawful.

OO. But being found guilty under an unfair and illegal set of rules automatically causes substantial harm. What the rules seem to mean is this: "it doesn't matter if these rules are

illegal, so long as a guilty student is found guilty." This very statement stands the Fourteenth Amendment on its head. Civil rights exist to guarantee fairness, whenever government takes property or liberty. That's why they're called "rights."

PP. So the people who drafted and approved these rules think it's acceptable if the accused is compelled to give the school a statement, that he be compelled to "participate" in the investigation, that he have a lawyer who (in the words of attorney for Oliver North, Brendan Sullivan, before the 1986 Iran-Contra Committee) is a "potted plant," who has no right to effectively confront the accuser, and who have no problem that some type of quota system is used to compose the panels.

QQ. As to the substantive "Policies and Procedures," where "offenses" are defined, (2 C 13 and 3 C 14)and where "consent" is purported to be defined:

1. The "consent after drinking alcohol" rules do not comport with Illinois civil or criminal law. A rough but accurate summary of SIU-E's rules is to this effect: "if you have been drinking, you can't lawfully have sex." That is not the law of the outside world, and the events of October 14 to 15, 2017 between these two "F Buddies," each of whom drank enough to make them vomit at some point in the proceedings, occurred off campus, IN the outside world of the normal and rational law of consent.

2. Simply put, there is no evidence in the report that L M

knew or should have known that C M was not capable of giving consent.

3. Plaintiff asked the Panel (in his ignored and unruled on Motion to Dismiss) to ask themselves, "if C M thought she had been raped [a most serious offense, just short of murder, in the opinion of L M's counsel), why 'take control' [C M's word] of the situation and have voluntary sex the third time they had sex that morning, why didn't she call 911 or the Edwardsville Police, why didn't she immediately go to the hospital to be evaluated and treated, so obviously potential evidence could have been properly preserved?"

4. L M has the answer: she did not act like a rape victim because she knew that she had consented to all of the intercourse and oral sex.

5. As to her possible or likely motive to account for why she would falsely claim rape twenty-four (24) days later when in fact she had indicated real consent, L M's explanation is that C M wanted a more romantic and real relationship with him (instead of just being a "hook up"). L M wanted no part of that, so he believes she came after him, using the SIU-E "adjudication" process, and ignored the state criminal justice system, a system that would have fully investigated her claims but likely would have not charged L M with any crime.

6. SIU-E's "consent" rule does not allow for valid consent to be given when the man involved receives definite body language signals from his long time partner that she wanted sex. That is what he took C M's "grinding" into his pelvis to mean: definite consent. What's next for SIU-E? Requiring written consent? Video-taped consent? That would actually make more sense than the current rules.

RR. Under VI F 1, there is absolutely no statute of limitations for making a sex harassment or sex assault Complaint at SIU-E. So by the very terms of the rule, someone could graduate with a degree in 2018 and then when they are 50 years old, someone with whom they had had a sexual relationship or encounter could claim that she or he had been assaulted. That's irrational. Now if the rules have stated that the person aggrieved has four years from the incident date in which to file a formal written Complaint, then Respondent would concede that that type of reasonable limitations period would be lawful. But there is no reason not to have any limitations period at all.

SS. As to the "amnesty provision," where a claimed victim is off the University hook for violating the school's alcohol use policy, but the accused isn't granted that same immunity, that's obviously unfair and uncalled for. It treats the accuser class differently and more favorably than the class of accused students.

COUNT I. SEEKING A DECLARATORY JUDGMENT UNDER 42 USC 1983 THAT SIUE'S SEX HARASSMENT POLICIES AND PROCEDURES VIOLATE DUE PROCESS AND THAT THE POLICIES AND PROCEDURES, AS APPLIED TO THE PLAINTIFF, VIOLATED HIS CONSTITUTIONAL RIGHTS.

32. The portions of the "Policies and Procedures" described in "Fact Common to all Counts" violate the accused students' rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution.

33. As applied in the case of the Plaintiff, his due process rights were violated by the use of the school's "Policies and Practices," as described above. Also, by finding that the Complainant was not honest when she has falsely claimed that she had been raped at 4:00 a.m. and 10:00 a.m., the Panel and Chancellor credited the word of an untruthful complainant when they found him guilty of having sex with C M against her will at 2:00 a.m. on October 15, 2017.

34. He has consistently maintained his innocence, and that at all times, when he had sex with C M, C M was a knowing and consenting participant in sexual activities.

35. In short, he had sex with her pursuant to their past practice because they each wanted to have sex with each other. SIUE's "rules" about having sex after ingesting alcohol in effect (if they are valid) outlaw ANY sexual activity between college student who have drank alcohol or taken recreational drugs, and that is not the law.

36. Plaintiff notes that if the school's rules on consent and alcohol use mirrored Illinois criminal common and statutory law (the law which applies to off campus activities in any event), he would have no complaint. But they don't.

37.   SIUE's rules and practices and procedures applying to the sexual activities of SIUE student are weighted in favor of almost always finding that sex by two students who are intoxicated is "nonconsensual" and therefore the basis for finding that a student is guilty of "sexual assault" or "sexual harassment," even in cases - like this one - in which students get drunk and become intimate.

WHEREFORE, Plaintiff prays that the court declare that the relevant SIUE sexual harassment rules and "Policies and Procedures" are unconstitutional, that the court vacate the "guilty" findings and declare that he was not guilty of sexually assaulting C M at any time on October 15, 2017, and he prays that he be awarded all of his reasonable and necessary attorney's fees and litigation costs, under 42 U.S.C Section 1988.

COUNT II. SEEKING INJUNCTIVE RELIEF UNDER 42 USC SECTION 1983

NOW COMES the Plaintiff, L M, by his counsel, and for Count II of his Complaint against both defendants states:

38. If the court grants him declaratory relief pursuant to Count I, then Plaintiff request an injunction against SIUE using or enforcing its relevant sex harassment rules and "Policies and

Procedures," against him or any other student in the future, as they violate the state and federal Constitutions, and without injunctive relief being issued, he has no adequate remedy at law, and he will suffer the irreparable harm of being labeled a "rapist" or "sexual assaulter" or "sexual harasser," when no such labels are justified.

39. In short, money damages only will not adequately compensate him for his losses (described in the alternative in Count III, which seeks money damages in this case).

40. Finally, the balance of equities favor the position of the Plaintiff, and not the school, as Illinois state law on sexual assault will be in force to protect the rights of students to not in fact be the victims of sexual assault, even if the school is enjoined form utilizing its sexual harassment rules and "Policies and Procedures."

WHEREFORE, the Plaintiff prays the the defendants be enjoined, per 42 USC Section 1983, from using or enforcing their current unlawful and unconstitutional sex harassment rules and "Policies and Procedures" at SIUE, and he prays for an award of Section 1988 reasonable and necessary legal fees and litigation costs, and he prays for such other and further relief which the court deems just.

COUNT III. SEEKING AN AWARD, IN THE ALTERNATIVE, OF COMPENSATORY DAMAGES UNDER 42 USC SECTION 1983

NOW COMES the Plaintiff, L M, by counsel, and for Count III of his Complaint against the defendants, states unto the court as follows:

41. Plaintiff restates and realleges all of the allegations in the section of this suit labeled "Facts Common to All Counts" as though fully set out herein.

42. Plaintiff in this count seeks an award - in the alternative - of compensatory monetary damages by reason of the Defendants' violation of his civil rights as described.

43. Plaintiff has suffered the following damages and or losses, as a result of Defendants' violation of his civil rights:

A. He has been wrongfully labeled a "sexual assaulter" and "sexual harasser" by Defendants, even though he is innocent.

B. Because of the false allegations hanging over his head, he was forced to graduate early, in three years, in May of this year.

C. He has been pushed to attend a graduate program at another school, a school he would rather not be attending, in order to keep and maintain and use a third party scholarship.

D. Plaintiff has been forced out of attending SIUE for a fourth year, a year he had wanted to attend, a year that, when

completed, would have made him more marketable to graduate programs.

    E. Plaintiff has been forced to lose out on a final and fourth year of FAFSA funding.

    F. Plaintiff has lost multiple fourth year scholarships.

    G. Plaintiff has suffered the stress of being falsely accused, and has suffered damage to his reputation, and has suffered mental anguish.

    H. He has been forced to forfeit his association with SIUE Housing after he had volunteered several semesters to that organization and had earned National Residence Hall honor.

    WHEREFORE, the Plaintiff prays for an award of compensatory damages against each defendant in an amount exceeding $50,000.00.

COUNT IV.   SEEKING DAMAGES FOR VIOLATION OF TITLE IX, 20 U.S.C. SECTION 1681, ET SEQ. - DISPARATE TREATMENT BASED ON SEX

    44.   Plaintiff repeats and re-alleges the Facts Common to All Counts.

    45.   Title IX, 20 U.S.C. Section 1681, et seq., prohibits discrimination in educational institutions on the basis of sex if any part of such an educational institution receives federal funds of any kind.  SIUE receives federal funding in the form of, *inter alia*, student loans and other monetary grants given to students and faculty members.

46. Both the United States Department of Education and the United States Department of Justice have promulgated regulations under Title IX that require a educational institution to put in place grievance procedures providing for the adjudication of sexual misconduct claims by students. *See* 28 C.F.R. Section 54.135(b); 34 C.F.R. Section 106.8(b). These procedures must afford due process to the parties involved and, at a minimum, provide "adequate, reliable, and ***impartial*** investigation of complaints." *See generally* U.S. Dep't of Ed., Office of Civil Rights, *revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties - Tile IX* (2001) (emphasis added).

47. In the manner in which it approaches the investigation, adjudication, and appeal of allegations of sexual misconduct, SIUE creates an environment in which male students accused of sexual misconduct are nearly assured of a finding of responsibility. This denies the accused his fundamental due process rights and deprive these male students of educational opportunities solely on the basis of their sex.

48. More specifically with regard to the matter at bar, L M is a male student of SIUE, accused of sexual misconduct. He was subject to these aforementioned discriminatory practices as a result of the University's sexual misconduct disciplinary process. As described more fully *infra*, L M Has been stigmatized

as a result of his gender, while C M was viewed as a "victim," even before any adjudication of the sexual misconduct allegations against him took place. Furthermore, L M's testimony was totally discounted while C M's contradictory testimony was deemed more reliable without reason. Even considering C M's second and third voluntary sex acts with L M, the SIUE administrative hearing panel inexplicably found L M responsible. This discrimination was based ***solely*** on his gender, in violation of Title IX.

49. As a direct and proximate result of SIUE's unlawful sex discrimination against L M, he has and will continue to suffer harm, injury, and damages. Such harm, injury, and damages include, but are not limited to, denial of educational opportunities, loss of scholarship funds, inability to transfer to other educational institutions, reputational damages including his standing in his community, loss of career opportunities and further earning capacity, humiliation and embarrassment, and mental and emotional distress.

50. Accordingly, SIUE is liable to L M for discrimination against him solely on the basis of his sex, in direct contravention of Title IX. SIUE is therefore liable to L M for all damages allowed to him thereunder, including compensatory damages, punitive damages, and attorney's fees.

WHEREFORE, the Plaintiff prays for an award in excess of $50,000.00 in compensatory damages, plus costs and attorney's fees.

COUNT V - SEEKING DAMAGES FOR VIOLATION OF TITLE IX, 20 U.S.C. SECTION 1681, ET SEQ.- DISPARATE IMPACT BASED ON SEX

51. Plaintiff repeats and re-alleges Facts Common to All Counts.

52. In the manner in which it approaches the investigation, adjudication, and appeal of allegations of sexual misconduct, SIUE creates an environment in which the accused is nearly assured of a finding of responsibility. Upon information and belief, the accused is a male in virtually all cases of allegations of sexual misconduct at SIUE. Therefore, SIUE's sexual misconduct disciplinary process has a disparate impact on male students.

53. Defendant, SIUE, has not provided a legally sufficient rationale for creating and applying different standards for the accused and the accuser in a sexual misconduct matter. Furthermore, there is no legitimate basis for these different standards. The disparate standard denies the accused his fundamental due process rights and deprives these male students of educational opportunities solely on the basis of their sex.

54. More specifically with regard to the matter at bar, L M is a male student at SIUE accused of sexual misconduct. He was

subject to these aforementioned discriminatory practices as a result of the University's sexual misconduct disciplinary process.  As described more fully *infra*, he was stigmatized as a result of being accused of sexual misconduct while C M was viewed as a "victim" even before any adjudication of the sexual misconduct allegations against L M took place. Furthermore, L M's testimony as the accused was discounted while C M's testimony as accuser was deemed more reliable without reason.  Even considering C M's second and third voluntary sex acts with L M, and how they were juxtaposed against what she purported was resistance to the first act of sexual intercourse, the SIUE administrative hearing panel inexplicably found L M responsible. Male students bear the brunt of this disparate impact because males are disparately accused of sexual misconduct at SIUE.

55.  As a direct and proximate result of the University's unlawful sex discrimination against L M, he has and will continue to suffer harm, injury, and damages.  Such harm, injury, and damages include, but are not limited to, denial of educational opportunities, loss of scholarship funds, inability to transfer to other educational institutions, reputational damages including to his standing in his community, loss of career opportunities and future earning capacity, humiliation and embarrassment, and mental and emotional distress.

56. Accordingly, SIUE is liable to L M for discrimination against him solely on the basis of his sex, in direct contravention of Title IX. SIUE is therefore liable to L M for all damages allowed to him thereunder, including compensatory damages, punitive damages, and attorney's fees.

WHEREFORE, the Plaintiff prays for an award in excess of $50,000.00 in compensatory damages, plus costs and attorney's fees.

COUNT VI - SEEKING ADMINISTRATIVE REVIEW AND RELIEF AND VACATION OF THE ADVERSE DETERMINATION OF SIUE AND DEFENDANT PEMBROOK OF JUNE 19, 2018

NOW COMES the Plaintiff, L M, by counsel, Eric M. Rhein, and for Count VI of his Complaint against the Defendants, SIU-E and Chancellor Pembrook, seeking relief under 735 ILCS, Chapter 5, Article III, the Illinois Administrative Review Act, and he states:

57. Plaintiff hereby repeats and re-alleges all factual allegations he has written herein, in the section called "Facts Common to All Counts," as though fully set out herein.

58. The Chancellor's June 19, 2018 written decision is an "administrative decision" by an "administrative agency" (SIU-E) under the Illinois Administrative Review Act.

59. Plaintiff seeks the vacation and annulment of that decision in this court, as it is devoid of substantial evidence

to support it.

60. The award is based on insufficient evidence, for the reasons stated in the "Facts Common to All Counts."

61. The record is devoid of evidence insufficient to prove the guilt of Plaintiff by a preponderance of the evidence.

62. The underlying determination of the state agency is based on "seriously controverted evidence," in a "he said/she said" set of facts, a determination not supported by a report to police or any physical or first hand medical evidence. See In re Matter of Hill, cited below.

63. The determination should also be vacated and annulled because of the Defendants' "cavalier attitude toward the accused's due process rights." See written opinion of the Appellate Division of the Supreme Court of New York, 811 TP 18-00205, in In the Matter of Tyrone Hill v. State University of New York (slip op. dated July 6, 2018.

WHEREFORE, Plaintiff prays that the court annul and vacate the June 19, 2018 adverse determination by Defendants that Plaintiff has sexually assaulted C M on October 15, 2017, and expunge all references to the charge from his school record and transcript, and he prays for all such and further relief that the court deems just.

/s/ Eric M. Rhein
Eric M. Rhein, #06186203
Attorney for Plaintiff
6897 West Main Street
Belleville, IL 62223
Telephone: 618-394-9230
Fax: 618-394-9404
Email: ericrhein@icloud.com

# Policies & Procedures

## Miscellaneous

### Sexual Assault, Sexual Misconduct and Relationship Violence Policy & Procedures - 2C13 & 3C14

I. Purpose

II. Scope of Policy

III. Prohibited Conduct

IV. Understanding Consent and Related Definitions

V. Where to Get Help

VI. Reporting Options

VII. Interim Measures and Accommodations

VIII. Investigation, Determination and Appeals

IX. Education and Prevention

X. Additional Resources and Support Services

XI. Attribution

#### I. Purpose

Southern Illinois University Edwardsville (SIUE) is committed to providing equal employment and educational opportunities to all persons. In particular, SIUE is committed to maintaining a community in which students, faculty, and staff can work and learn together in an atmosphere free of all forms of discrimination, including sexual harassment. Sexual harassment violates the dignity of the individual and the integrity of the University as an institution of higher learning, and thus, sexual harassment in any form will not be tolerated at SIUE. Sexual Assault and other forms of Sexual Misconduct are considered forms of Sexual Harassment. In general, relationship violence includes any act of violence or threatened act of violence against a person who is or has been involved in a sexual, dating, domestic, or other intimate relationship with that person. Individuals who are found responsible under the Policy will face disciplinary sanctions up to and including [illegible] and/or termination of employment.

The University is committed to taking all appropriate steps to eliminate prohibited conduct, prevent its recurrence and address its effects. The University is committed to fostering a climate free from sexual assault, sexual misconduct, stalking and relationship violence through clear and effective policies, [illegible] education and prevention programs, and prompt and equitable procedures for resolution of complaints that are accessible to all and facilitates prompt reporting. The University encourages [illegible] in the process of creating a safe [illegible].

This Policy addresses Southern Illinois University [illegible] Violence Against Women Reauthorization Act [illegible] educational programs and activities that receive federal financial assistance. Title IX protects any person from sex-based discrimination. Female, male, and gender non-conforming students, faculty, and staff are protected from any sex-based discrimination, harassment or violence. Similarly, the Violence Against Women Reauthorization Act of 2013 Section 304 requires that universities have procedures in place to respond to matters of sexual assault, relationship (dating) violence and stalking involving female, male, and gender non-conforming individuals. This Policy covers concerns of sexual assault and sexual misconduct, dating violence or domestic violence ("Relationship Violence") and stalking (collectively "Prohibited Conduct").

#### II. Scope of Policy

This Policy prohibits all forms of sexual assault, sexual misconduct, relationship violence and stalking. The Policy applies to all members of the University community including students, faculty, staff, administrators, board members, consultants, vendors, visitors, and others engaged in business with the University. <u>This Policy applies to conduct on or off campus property that substantially interferes with the mission of the University including but not limited to, interference with the safety and well-being of self or others and/or interference with the academic pursuits or employment environment of all students, faculty or staff.</u> Allegations of Sexual Harassment that are not specifically prohibited by this Policy will be addressed [illegible] Sexual Harassment [illegible].

#### III. Prohibited Conduct

The University prohibits all forms of Sexual Assault [illegible] is a broad term that includes [illegible] aiding or facilitating [illegible].

**"Sexual Harassment--Hostile Environment"** [illegible] so severe, persistent, or pervasive that it [illegible] to participate in or benefit from a University program [illegible] academic environment. Sexual harassment [illegible] words, symbols, images, or objects that some people find offensive. Additional information about Sexual Harassment can be found in the SIUE Sexual Harassment [illegible].

**"Sexual Assault"** is any type of sexual contact or sexual intercourse with another that occurs without that person's knowing and voluntary consent.

**"Sexual Contact"** [illegible]

No. 18-MR-

Exhibit One

intentional bodily contact in a sexual manner, though not involving contact with/of/by breasts, buttocks, groin, genitals, mouth or other orifice.

**"Sexual Intercourse"** includes vaginal or anal penetration, however slight, with a body part (e.g., penis, tongue, finger, hand, etc.) or object, or oral penetration involving mouth to genital contact.

**"Sexual Exploitation"** is taking advantage of the sexuality of another person without consent or in a manner that extends the bounds of consensual sexual activity without the knowledge of the other individual for any purpose, including sexual gratification, financial gain, personal benefit, or any other non-legitimate purpose. Examples of sexual exploitation include:

- non-consensual video or audio-taping of sexual activity;
- going beyond the boundaries of consent (such as letting others hide in the closet to watch you having consensual sex);
- engaging in voyeurism;
- knowingly transmitting an STD or HIV to another person;
- exposing one's genitals in non-consensual circumstances;
- inducing another to expose their genitals;

**"Stalking"** is when any person purposely and repeatedly (two or more times) engages in an unwanted course of conduct that would cause a reasonable person to fear for his, her, or others' safety, or to suffer substantial emotional distress. Stalking can be a form of Sexual Harassment. Such harassment can be either physical stalking or cyber stalking. Stalking may present a safety concern or be an indicator of a potential safety concern.

**"Dating Violence"** refers to violence by a person who has been in a romantic or intimate relationship with the Complainant. Whether a relationship exists will depend on the length, type, and frequency of interaction.

**"Domestic Violence"** refers to violence committed by a current or former spouse or relationship partner, current or former cohabitant, a person with whom a Complainant shares a child in common, a person similarly situated to a spouse under domestic or family violence law, or anyone else protected under domestic or family violence law.

**"Aiding or Facilitating"** refers to when any individual or group of individuals aids, facilitates, promotes, or encourages another to commit a violation under this Policy. Aiding or facilitating may also include failing to take action to prevent an imminent act when it is reasonably prudent and safe to do so.

**"Retaliation"** refers to any acts, threats, or attempts to discourage a person from reporting prohibited conduct or participating in the investigation or hearing process. Retaliation also refers to any acts, threats, or attempts to seek retribution against a Complainant, Reporting Party, the Accused Party, or any individual or group of individuals involved in the investigation and/or resolution of an allegation of sexual misconduct. Retaliation can be committed by any individual or group of individuals, not just a Reporting Party or Accused Party.

## IV. Understanding Consent and Related Definitions

**Consent** is a freely and knowingly given agreement to the act of sexual conduct or sexual penetration in question. Consent is demonstrated through mutually understandable words and/or actions that clearly indicate a willingness to engage freely in sexual activity. While consent can be given by words or actions, non-verbal consent is more ambiguous than explicitly stating one's wants and limitations. Silence cannot be assumed to indicate consent. Lack of verbal or physical resistance or submission resulting from the use of force or threat of force by the accused shall not constitute consent.

**Guidance for Consent:**

- One is expected to obtain consent to each act of sexual activity prior to initiating such activity. Consent to one form of sexual activity does not constitute consent to engage in other forms of sexual activity.
- Consent consists of an outward demonstration indicating that an individual has freely chosen to engage in sexual activity. Relying on non-verbal communication can lead to misunderstandings. Consent may not be inferred from silence, passivity, lack of resistance, or lack of an active response alone. A person who does not physically resist or verbally refuse sexual activity is not necessarily giving consent.
- When consent is requested verbally, absence of any explicit verbal response constitutes lack of consent. A verbal "no" constitutes lack of consent, even if it sounds insincere or indecisive.
- If at any time during the sexual activity, any confusion or ambiguity arises as to the willingness of the other individual to proceed, both parties should stop and clarify verbally the other's willingness to continue before continuing such activity.
- Either party may withdraw consent at any time. Withdrawal of consent should be outwardly demonstrated by words or actions that clearly indicate a desire to end sexual activity. Once withdrawal of consent has been expressed, sexual activity must cease.
- Individuals with a previous or current sexual relationship do not automatically give either initial or continued consent to sexual activity. Even in the context of a relationship, there must be mutually understandable communication that clearly indicates a willingness to engage in sexual activity.
- Consent to engage in sexual activity with one person does not constitute consent to engage in sexual activity with another.
- Consent is not valid if it results from the use or threat of physical force, intimidation, or coercion, or any other factor that would eliminate an individual's ability to exercise his or her own free will to choose whether or not to have sexual contact. It is a violation of the Sexual Harassment Complaint Procedures if faculty members, coaches, advisors, or other staff members become involved in amorous or sexual relationships with students who are enrolled in their classes or subject to their supervision, even when both parties appear to have consented to the relationship. Likewise, it is a violation for a supervisor and a directly reporting employee to have a consensual amorous or sexual relationship with each other.

- A person's manner of dress does not constitute consent.
- An individual who is incapacitated from alcohol or other drug consumption (voluntarily or involuntarily) or is asleep, unconscious, unaware, or otherwise physically helpless is considered unable to give consent.
- In the State of Illinois, persons under the age of 17 cannot legally consent to sexual activity. Thus, in Illinois, any sexual activity with persons under the age of 17 could constitute sexual assault of a minor, and implicate mandatory child abuse reporting. *For additional information regarding child abuse and mandatory reporting see:* http://www.siue.edu/humanresources/mandatory-reporting.shtml

**Incapacitation, Alcohol, Coercion, and Related Concepts:**

A person violates the Sexual Assault, Sexual Misconduct and Relationship Violence Policy if he or she has sexual contact with someone he or she knows, or should know, to be mentally incapacitated or has reached the degree of intoxication that results in incapacitation. The test of whether an individual should know about another's incapacitation is whether a reasonable, sober person would recognize the incapacitation. An accused person cannot rebut a Sexual Assault or Sexual Misconduct charge merely by asserting that he or she was intoxicated or otherwise impaired and, as a result, did not know that the other person was incapacitated. Alcohol, drugs or other intoxicants do not dismiss the responsibility of an individual to obtain valid consent.

A person is considered incapacitated, or unable to give consent, if they are unable to understand the nature of the activity or give knowing consent due to the circumstances at the time in question.

<u>A person is NOT able to give effective consent in the following situations:</u>

• An individual who is incapacitated due to the consumption of alcohol or other drugs cannot consent to sexual activity. An individual is incapacitated if he/she is physically helpless, unconscious, or unaware due to drug or alcohol consumption (voluntarily or involuntarily) or for some other reason.

Where alcohol is involved, incapacitation is a state beyond drunkenness or intoxication. Some indicators of incapacitation may include, but are not limited to, lack of control over physical movements, being unaware of circumstances or surroundings, slurred speech, vomiting, or being unable to communicate for any reason.

• When an individual is sleeping or unconscious.

• When a person's mental capacity is not at the level of an adult, such as an individual with a mental or developmental disability.

<u>In some situations, an individual's ability to freely, willingly, and knowingly consent is taken away by another person or circumstance. Examples include, but are not limited to:</u>

• When an individual is physically forced to participate. Force is the use of physical violence and/or imposing on someone physically in order to gain sexual access. There is no requirement that a party resists the sexual advance or request, but resistance is a clear demonstration of non-consent. Any sexual activity that is forced is by definition without consent.

• When an individual is intimidated, threatened – even by a perceived threat – isolated, or confined.

• When an individual is coerced or unreasonably pressured for sexual activity. When someone makes clear that they do not want to engage in sexual activity, that they want sexual activity to stop, or that they do not want to go past a certain point of sexual interaction, continued pressure past that point can be coercive behavior. When evaluating coercive behavior, factors such as the frequency, duration, location, isolation of recipient of the unwanted contact, and intensity of coercive behaviors will be considered.

V. **Where to Get Help**

The University is committed to treating all members of the community with dignity, care, and respect. Any individual affected by sexual assault, sexual misconduct or relationship violence, whether as a Complainant (an individual who makes a complaint under this Policy), a Respondent (an individual or group that is accused under this Policy), or a third party, will have equal access to support consistent with their needs and available University resources.

The University recognizes that choosing whether to make a report or how to proceed can be a difficult decision. The University encourages any individual who has questions or concerns to seek the support of campus and community resources. These professionals can provide information about available resources and procedural options and assistance to either party in the event that a report and/or resolution under this Policy are pursued. Individuals are encouraged to use all available resources, regardless of when or where the incident occurred.

A. **Emergency Assistance and Medical Care**

The University encourages all individuals to seek assistance from a medical provider and/or law enforcement as soon as possible following an incident that poses a threat to their safety or physical well-being. This is the best option to provide physical safety, emotional support, and medical care to the Complainant. It is also the best option to ensure preservation of evidence which may only exist for a limited period of time, and to begin a timely investigative and remedial response. The University will escort any University member to a safe place, provide transportation to the hospital, assist in coordination with outside law enforcement agencies if applicable, assist in coordination with a victim's advocate, and provide information about the University's resources and complaint process.

Assistance is available from the University and local law enforcement 24 hours/day, year round, by calling the SIUE Police Department or the local jurisdiction if off-campus. Any individual can request that a member of the Police Department respond and take a report. Every effort is made to protect the Complainant's identity.

An individual can also contact a local medical provider 24 hours/day, such as Anderson Hospital. The local medical providers can provide emergency and/or follow-up medical services, and provide

[illegible]

**SIUE Police Department**
**Emergency Telephone Number: 911 (if calling from campus)**
Non-Emergency Telephone [illegible]
94 Supporting Services Drive

**Anderson Hospital**
6800 State Route 162
Maryville, IL
618-288-5711

**Call for Help Incorporated (24 hrs/day)**
**618-397-0975**
9400 Lebanon Rd.
East St. Louis, IL 62203
http://callforhelpinc.org/what-we-do/sexual-assault-victims-care-unit.html

B. **Confidential Campus Resources**

The only University resources that afford complete confidentiality (assuming no other conditions require mandatory reporting, *i.e.*, known or suspected child abuse or neglect) are:

1. **Confidential Advisor** provides emergency and ongoing support to student survivors of sexual violence and relationship violence. The advisor will provide confidential services and have privileged and confidential communications with survivors. The advisor will inform the survivor of possible next steps regarding reporting options and possible outcomes, will notify the survivor of resources and services on-campus and in the community, will inform the survivor of their rights and the University's responsibilities to enforce orders of protection and no contact orders; and if requested by the survivor, the advocate will liaise with campus officials to secure interim protective measures and accommodations, and will liaise with campus officials, law enforcement and community resources to assist the survivor with making contact and/or reporting an assault. The Confidential Advisor is:

   Lindsay Serrano
   Counselor
   Counseling Center
   618-650-2842
   RM 0220, Student Success Center

2. **Counseling Services** provides individual counseling and legal and medical advocacy to students who have been sexually assaulted or have experienced sexual misconduct, or relationship violence. Students in need of information, emotional support, and/or counseling for issues of sexual assault, sexual misconduct, and relationship violence may seek confidential help at the Counseling Services office. Speaking with a licensed counselor may be helpful in deciding how to proceed. Because of the privileged nature of these conversations, Counseling Services will not share information about a patient/client (including whether or not that individual has received services) with the Title IX Coordinator or any other employee of the University without that person's express written permission. Counseling Services may submit however, non-identifying information about the incident for purposes of making a statistical report under the Clery Act.

   Counseling Services is located on the Edwardsville Campus in the Student Success Center, lower level, Room 0220. Office hours are Monday-Friday, 8:00 am - 4:30 pm, phone 618/650-2842. A counselor from Counseling Services can be available at the Alton Campus. After hours or weekend services may be obtained by calling University Police, 618/650-3324, and requesting a callback from a counselor.

   Additional counseling and advocacy resources can be found [illegible]

3. **Health Service** can provide students with non-emergent or follow up medical services, including STD testing, and provide an opportunity to discuss any health care concerns related to the incident in a confidential medical setting. Health Service is committed to protecting the privacy and confidentiality of all patient/client health information. All patient interactions with Health Service are considered strictly confidential.

   Health Service is located on the Edwardsville Campus in the Student Success Center, lower level, Room 0222. Office hours are Monday-Friday, [illegible] pm, phone 618-650-2842

4. Employees have access to the **Employee Assistance Program & Counseling (EAP)**, which is a free and confidential resource. More information is available on the Central Management Services Employee Assistance Program website.

VI. **Reporting Options**

The University is committed to providing a variety of welcoming and accessible options so that all instances of sexual assault, sexual misconduct, stalking and relationship violence will be reported. The University has a strong interest in supporting victims and survivors of sexual assault, sexual misconduct, stalking and relationship violence and encourages all individuals or third party witnesses to report any incident to the University and, if it involves potential

NO. 18-MR-

[illegible]

**Electronic Reports** [illegible]

A. **Title IX Coordinator**

[illegible] committed on campus will be reported to the SIUE Police Department [illegible] The Title IX Coordinator is:

**Chad Martinez**
Director
Equal Opportunity, Access & Title IX Coordination
SIUE Campus box 1025
Edwardsville, IL 62026
Rendleman Hall, 3310
Phone: 618-650-2333
Fax: 618-650-2270
cmartaa@siue.edu

The University has named the following individual as an Assistant Title IX Coordinator who can also receive reports:

**Katherine Zingg**
Assistant Athletic Director for Compliance
Intercollegiate Athletics
Vadalabene Center, 1331B
618-650-5475
kzingg@siue.edu

B. **Other Campus Reporting Contacts**

The University recognizes, however, that a student or employee may choose to confide in any employee of the University. For example, a student may choose to confide in a department chair, a resident assistant, a faculty member, a director or a coach. Similarly, an employee may choose to confide in a supervisor or colleague. Please note that all University employees (*except those bound by a legal privilege, such as licensed medical providers or counselors in Counseling and Health Services*) who are informed about a sexual assault, sexual misconduct or relationship violence are required to report the information to a **Campus Reporting Contact** or to the Title IX Coordinator or designee.

To enable the University to respond to all reports in a prompt and equitable manner, the University has designated the following **Campus Reporting Contacts** to receive reports of sexual assault, sexual misconduct, relationship violence and/or stalking. The designated Campus Reporting Contacts have been trained to make the Complainant aware of available options to aid the Complainant in making an informed decision as to a course of action. Campus Reporting Contacts are required to forward any reports to the Title IX Coordinator, but all efforts will be made to ensure privacy and that only individuals that have a need to know are provided any information. The designated Campus Reporting Contacts are:

- Office of Equal Opportunity, Access and Title IX Coordination [illegible]
- SIUE Police Department, http://www.siue.edu/police
- Student Affairs/Dean of Students, [illegible]
- Office of Institutional Diversity and Inclusion: http://www.siue.edu/institutionaldiversityandinclusion/
- University Housing Professional Staff, [illegible]
- Sexual Harassment Advisors, [illegible]
- Office of Human Resources (when an employee is involved), http://www.siue.edu/humanresources/index.shtml

C. **Reporting to Law Enforcement/Criminal Complaint**

The University encourages Complainants to pursue criminal action for incidents of sexual assault, sexual misconduct, stalking and relationship violence that may also be crimes under state criminal statutes. Contacting law enforcement [illegible] remedial response. The University will [illegible] contacting local law enforcement and [illegible] decides to pursue the criminal process.

Page 37 of 48

No. 18-MR-

[illegible]

**SIUE Police Department**
**Emergency Telephone Number - 911**
Non-emergency Telephone Number [illegible]
[illegible] Supporting Services [illegible]
Edwardsville, IL [illegible]

**Edwardsville Police Department**
400 N Main St
Edwardsville, IL 62026
(618) 656-2131

D. **Bystanders**

All reporting options are available to bystanders. The University encourages all members of the University community to take reasonable and prudent steps to prevent or stop incidents of sexual misconduct. Taking action may include direct intervention when safe to do so, enlisting the help of friends, contacting the SIUE Police Department or other local law enforcement, or seeking assistance from a person in authority. Community members who choose to exercise this positive, moral obligation will be supported by the University and protected from retaliation. More information regarding bystander action can be found on the Counseling Services website at http://www.siue.edu/counseling/.

E. **Anonymous Reporting**

Any individual may make an anonymous report concerning an act of sexual assault, sexual misconduct or relationship violence. A report can be made without disclosing one's own name, identifying the Respondent, or requesting any action. Depending on the level of information available about the incident or the individuals involved, anonymous reporting may impact the University's ability to respond or take further action.

As with all other reports, all anonymous reports will go to the Title IX Coordinator for review and appropriate response and action. Where there is sufficient information, the University will ensure that anonymous reports are reviewed and included for compliance with the Clery Act.

F. **Reporting Considerations**

1. Timeliness of Report, Location of Incident

Complainants and third party witnesses are encouraged to report sexual assault, sexual misconduct, stalking and relationship violence as soon as possible in order to maximize the University's ability to respond promptly and effectively. However, there is no time limit on reporting violations of this Policy. If the Respondent is no longer a student or employee, the University may not be able to take action against the Respondent, but will still seek to meet its Title IX obligation by providing support for the Complainant and taking steps to end the harassment, prevent its recurrence, and address its effects.

An incident does not have to occur on campus to be reported to the University. Off-campus conduct that substantially interferes with the mission of the University including but not limited to, interference with the safety and well-being of self or others and/or interference with the academic pursuits or employment environment of its students, faculty, or staff is covered by this Policy.

2. Amnesty for Personal Use of Alcohol or Other Drugs by Students

The University seeks to remove any barriers to reporting. The University will generally offer any student, whether the Complainant or a third party, who reports sexual assault, sexual misconduct or relationship violence limited immunity from being charged for policy violations related to the personal ingestion of alcohol or other drugs, provided that any such violations did not and do not place the health and safety of another person at risk. The University may choose, however, to pursue educational or therapeutic remedies for those individuals.

3. Confidentiality

The University will make reasonable and appropriate efforts to preserve a Complainant's and Respondent's privacy and to protect the confidentiality of information. Should a Complainant request confidentiality, the Title IX Coordinator will inform the Complainant that the University's ability to respond may therefore be limited, but that where feasible, the University will take reasonable steps to prevent Prohibited Conduct and limit its effects. The Title IX Coordinator will further inform the Complainant that it is not possible to provide confidentiality in all cases and that the University's decision to share information with others is subject to the balancing test described below in Section [illegible]. In summary, although the University's goal is to limit the number of individuals who they learn about an allegation of Prohibited Conduct or an investigation, the University cannot guarantee confidentiality in all

NO SIU

No. 18-MR-

Page 38 of 48

matters. The only completely confidential resources on-campus are the Confidential Advisor, Counseling and Health Services, listed above in Section V.

4. False Reporting

The University takes the validity of information very seriously as a charge of sexual assault, sexual misconduct or relationship violence may have severe consequences.

A Complainant who makes a report that is later found to have been intentionally false or made maliciously without regard for truth may be subject to disciplinary action and may also violate state criminal statutes and/or civil defamation laws. This provision does not apply to reports made in good faith, even if the facts alleged in the report are not substantiated by an investigation.

Similarly, a Respondent or witness who is later proven to have intentionally given false information during the course of an investigation or hearing may be subject to disciplinary action.

G. **Retaliation**

Retaliation against a student or an employee who reports or discloses an alleged violation of this policy, or who participates in an investigation of a complaint, is prohibited. Retaliation is prohibited by University policy, state and federal law, and can lead to disciplinary action independent of the allegations.

H. **Response Protocol**

The University will respond to all reports of sexual assault, sexual misconduct or relationship violence in a timely, effective, and consistent manner. Factors the University may consider in determining which response procedure(s) to follow include when the report is filed and how the Complainant chooses to proceed. The University's response procedures include, but are not limited to, the following:

1. All employees who are aware of sexual assault, sexual misconduct or relationship violence are required to report the information to a Campus Reporting Contact (listed in Section VI. B of this Policy) or to the Title IX Coordinator or designee, unless the employee is otherwise designated as a confidential resource.
2. The Campus Reporting Contact will assist the Complainant in getting to a safe place. In doing so, the Campus Reporting Contact will coordinate with the SIUE Police as needed.
3. The Campus Reporting Contact will encourage the Complainant to seek prompt medical attention for treatment of injuries and preservation of evidence, discuss the reasons why prompt medical treatment is important, and arrange for transportation to the hospital if the Complainant agrees to such medical treatment.
4. The Title IX Coordinator will inform the SIUE Police of the report, if the report was not initially received by the Police Department.
5. The Complainant will have the option to file a criminal report with the SIUE Police Department or appropriate jurisdiction. Declining to speak with the SIUE Police Department, or other appropriate jurisdiction, at the time of the initial report does not preclude the Complainant from filing a criminal report at a later date.
6. The Campus Reporting Contact or the Title IX Coordinator will coordinate with a counselor from Counseling Services if a student Complainant wishes to receive such services. Employee Complainants will be provided assistance in identifying resources.
7. The Campus Reporting Contact will provide to the Complainant information describing the various reporting options described in this policy and available resources. The information will be discussed at the time of the initial report and provided in writing.
8. If the Complainant wishes to pursue a report through this process, the Campus Reporting Contact will arrange for the Title IX Coordinator to contact the Complainant within one (1) business day of receiving the report to discuss the process, as well as available options, including, but not limited to, academic assistance, alternative housing, or a "no contact" order from the University.
9. If the Complainant does not wish to pursue a report through this Policy, the Campus Reporting Contact will provide a referral to appropriate resources listed in this Policy. The Campus Reporting Contact will also provide information on available options, including, but not limited to, academic assistance, alternative housing, or a "no contact" order from the University. Please note that even if the Complainant chooses not to participate in this process or pursue the report as a criminal matter, the University is obligated to review the report and may initiate the investigative process if enough information is available.

VII. **Interim Measures and Accommodations**

A. **Overview**

Upon receipt of a report, and throughout the investigation and appeal process, the University will implement reasonable and appropriate interim measures designed to eliminate the reported hostile environment and protect the parties involved. The University will maintain consistent contact with the parties to ensure that all reasonable safety and emotional and physical well-being concerns are being addressed and will review any measures to ensure on-going effectiveness and necessity. Measures may be imposed regardless of whether formal disciplinary action is sought by the Complainant or the University in order to ensure the preservation of the Complainant's educational or employment experience and the overall University environment.

No. 18-MR-

A Complainant or Respondent may request separation or other protection, or the University may choose to impose interim measures without a request, to ensure the safety of all parties, the broader University community, and/or the integrity of the investigative and/or resolution process. The University will take immediate and responsive action to enforce a previously implemented measure and disciplinary sanctions can be imposed for failing to abide by a University-imposed measure.

B. **Range of Measures**

The University will implement appropriate and reasonable interim measures. Potential measures, which may be applied to the Complainant and/or the Respondent to the extent reasonably available and warranted by the circumstances, include:

1. Access to counseling services and assistance in setting up initial appointment, both on and off campus
2. Imposition of an on-campus "no-contact directive"
3. Rescheduling of exams and assignments
4. Providing alternative course completion options
5. Change in class schedule, including the ability to transfer course sections or withdraw from a course without penalty
6. Change in work schedule or job assignment
7. Change in student's University-sponsored or controlled housing
8. Limit of an individual's or organization's access to certain University facilities, including dining facilities, or activities, pending resolution of the matter
9. Voluntary leave of absence
10. Providing an escort and needed transportation to ensure safe movement between classes and activities
11. Uphold no contact orders or orders of protection issued by other bodies
12. Providing academic support services, such as tutoring
13. University-imposed administrative leave or separation
14. Interim suspension
15. Any other remedy which can be tailored to the involved individuals to achieve the goals of this Policy.

VIII. **Investigation, Determination, and Appeals**

Although a report may come in through many sources, the University is committed to ensuring that all reports are referred to the Title IX Coordinator, who will ensure consistent application of the Policy to all individuals and allow the University to respond promptly and equitably to eliminate the harassment, prevent its recurrence, and address its effects.

A. **Title IX Assessment**

The University will conduct an initial Title IX assessment of every complaint under this Policy. The assessment will consider the nature of the report, the safety of the individual and of the campus community, the Complainant's expressed preference for resolution, and the necessity for any interim measures or accommodations to protect the safety of the Complainant or the community. Where possible and as warranted by an assessment of the facts and circumstances, the University will seek action consistent with the Complainant's request.

As part of the initial assessment of the facts, the University will:

- assess the nature and circumstances of the allegation
- address immediate physical safety & emotional well-being
- notify the Complainant of the right to contact law enforcement and seek medical treatment
- notify the Complainant of the importance of preservation of evidence
- assess the reported conduct for the need for a timely warning under the Clery Act
- provide the Complainant with information about on- and off-campus resources
- notify the Complainant of the range of interim accommodations and remedies
- provide the Complainant with an explanation of the procedural process
- identify an adviser, advocate, and/or support person for the Complainant
- assess for pattern evidence or other similar conduct by Respondent
- discuss the Complainant's expressed preference for the manner of resolution and any barriers to proceeding and
- explain the University's policy prohibiting retaliation

Where a Complainant requests that a name or other identifiable information not be shared with the Respondent or that no formal action be taken, the University will balance this request with its dual obligations to provide a safe and non-discriminatory environment for all University community members and to afford a Respondent fundamental fairness and due process by providing notice and an opportunity to respond before action is taken against a Respondent.

[illegible]

Following this assessment, the University may: 1) institute measures that are consistent with the Complainant's stated preference while balancing the University's responsibility to protect the University community; or, 2) initiate an investigation to determine if a violation of the Policy has occurred. The goal of the investigation is to gather all relevant facts and determine if there is sufficient information to refer the report for disciplinary action.

The determination as to how to proceed will be communicated to the Complainant in writing by the Title IX Coordinator. A Respondent will be notified when the University seeks action that would impact a Respondent, such as protective interim measures that impact the Respondent directly or the initiation of an investigation.

B. **Investigation**

Where the Title IX assessment concludes that an investigation is warranted, the University will initiate an investigation. Before beginning an investigation, the Title IX Coordinator will contact the Complainant and request consent from the Complainant to proceed with an investigation. As discussed above, an investigation may still go forward without the Complainant's request.

1. When the Title IX assessment concludes that an investigation is warranted, the Title IX Coordinator will appoint an investigator and initiate an investigation according to the SIUE Sexual Harassment Complaint Procedures - 2C5 & 3C4.

2. In cases where the Respondent is a student and where the investigator finds that by a preponderance of the evidence the Policy was violated, the investigator will notify the Dean of Students that a violation has occurred and will make a recommendation for appropriate discipline. If the student is a graduate assistant or student worker, the appropriate supervisor and the Dean of Students will receive notification. Those who were originally notified of the complaint will receive a copy of the written report.

3. In cases where the Respondent is an employee, the investigator will notify the Respondent's supervisor that the investigation is complete, and if a preponderance of the evidence supports a determination that a violation of the Policy occurred, will make recommendations for appropriate discipline. Those who were originally notified of the complaint will receive a copy of the written report.

A Title IX Investigation should be completed within thirty (30) working days of receipt of a complaint. The Title IX Coordinator may extend this time frame for good cause, including University breaks.

C. **Appeal Process**

If the Complainant or the Respondent is dissatisfied with final determinations made under this Policy, that person may file an appeal. The appeal should be filed in writing with the investigator and the Title IX Coordinator within five (5) working days of notification of the results of the investigation; either the Complainant or Respondent may notify the Title IX Coordinator of his or her wish to appeal. Where the Complainant or Respondent elects to appeal to the Sexual Harassment Panel, within three (3) working days of receipt of the notice of appeal, the Title IX Coordinator shall initiate the appeal process. For additional information on the Appeal Process, refer to the SIUE Sexual Harassment Complaint Procedures 2C5 & 3C4.

D. **Substantial Compliance**

Substantial compliance with these procedures shall be deemed full compliance if the party challenging the procedures has suffered no substantial harm caused by the actual procedure used.

E. **Sanctions**

Employees and Other Individuals

If there is a finding of a Policy violation against a University employee or another individual, the University may impose sanctions pursuant to applicable disciplinary procedures including, but not limited to:

- Apology to the victim
- Advice and counseling
- Required attendance at training
- Written warning
- Letter of reprimand

No. 18-MR-

- Removal of sexually explicit materials
- Required attendance at substance abuse training if substance abuse was involved
- Loss of travel dollars
- Loss of choice assignments
- Change of job or class assignment
- Suspension, probation, termination
- Loss of access to the University

<u>Students</u>

If there is a finding of a Policy violation against a student or student group, the University may impose sanctions including, but not limited to:

- Apology to the victim
- Written warning
- Letter of reprimand
- Removal of sexually explicit materials
- Prohibiting students from holding office or participating in activities such as sports events for a specified time
- Transferring the student to another class or job
- Disbanding or suspending a social organization or another student group involved in behavior
- Transferring students to different housing or prohibiting them from living in institutional housing facilities
- Requiring attendance at substance abuse training if substance abuse was involved
- Requiring relevant community service
- Requiring perpetrators to attend workshops or prevention programs
- Loss of student worker position or graduate assistantship
- Suspension, probation, dismissal or expulsion

IX. **Education and Prevention**

In accordance with the University's philosophy and mission, as well as Federal guidelines, programming and training about the Policy and the expectations of our community regarding sexual conduct, reporting options and procedures related to incidents of sexual assault, sexual misconduct or relationship violence and prevention are required for all students, faculty, and staff.

X. **Additional Resources and Support Services**

Whether or not a Complainant chooses to make an official report of Prohibited Conduct, he or she is urged to seek appropriate help. There are numerous resources available. Specific resources, either on or off campus, for medical treatment, legal evidence collection, obtaining information, support and counseling, and officially reporting a sexual misconduct or sexual assault are listed below. Each resource can assist a person to access the full range of services available. Discussing allegations of Prohibited Conduct with a Confidential Resource will not result in a report to the Title IX Coordinator.

**Confidential Resources On-Campus for Students**

- SIUE Counseling Services, 618-650-2842, http://www.siue.edu/[illegible]
- SIUE Health Service, 618-650-2842, http://www.siue.edu/healthservice/index.shtml

**Non-Confidential Resources On-Campus**

- Office of Equal Opportunity, Access and Title IX Coordination, 618-650-2333, http://www.siue.edu/[illegible]
- SIUE Police Department, 618-650-3324; http://www.siue.edu/police
- Student Affairs/Dean of Students, 618-650-2020, http://www.siue.edu/studentaffairs/dean.shtml
- Office of Institutional Diversity and Inclusion, 618-650-5382 http://www.siue.edu/institutionaldiversity/index.shtml
- University Housing Professional Staff, 618-650-3931, http://www.siue.edu/housing/index.shtml
- Sexual Harassment Advisors, http://www.siue.edu/[illegible]
- Office of Human Resources (when an employee is involved), 618-650-2190, http://www.siue.edu/humanresources/index.shtml

**Off-Campus Resources**

<u>Sexual Assault</u>

- [illegible]
- Anderson Hospital - [illegible] Phone: 618-288-[illegible]

No 18-MR-

Page 42 of 48

- Illinois Coalition Against Sexual Assault: 217 [illegible]
- National Sexual Assault Hotline: [illegible]

Relationship Violence

- Oasis Women's Center: 618-465-1978 or 800-244-1978
- Wellspring Resources: 24-hour adult crisis line 618/465-4388 or 618/462-2331 (Alton), 618/639-2016 (Jerseyville) or 24-hour child crisis line (800)345-9049 or go to http://wellspringresources.info/ for more information
- National Domestic Violence Help Line: 877-TO END DV (877-863-6338); http://www.cityofchicago.org/dam/city/depts/fss/supp_info/DV/NF [illegible]
- AARDVARC – An Abuse, Rape and Domestic Violence Aid and Resource Collection at www.aardvarc.org
- The Illinois Coalition Against Domestic Violence: 217-789-2830; http://www.ilcadv.org/about_icadv/contact.asp
- Madison County State's Attorney Domestic Violence Special Prosecution Unit: 618-692-6290; http://www.co.madison.il.us/departments/state_s_attorney/domestic_abuse.php
- Phoenix Crisis Center: 618-451-1008; http://[illegible]
- Illinois Department of Children and Family Services: 1-800-25-ABUSE (800-252-2873); https://www.illinois.gov/dcfs/Pages/default.aspx

Other

- Illinois Department of Central Management Services [illegible] Assistance Program [illegible] 3848; https://www2.illinois.gov/cms/Employees/[illegible]
- Madison County State's Attorney: 618-692-6280; http://[illegible]
- Land of Lincoln Legal Assistance Foundation: 618-344-7500 or 877-342-7891; http://lollaf.org/
- Illinois Attorney General's Office: 1-800-228-3368, www.ag.state.il.us/victims/
- Illinois Crime Victims Bill of Rights 725 ILCS 120/1 (http://www.ilga.gov/legislation/ilcs/ilcs3.asp?ActID=1970&ChapterID=54
- Illinois Crime Victims Compensation Program: 800-228-3368 [illegible]

## XI. Attribution

Sexual assault, misconduct, relationship violence, stalking, and other violence are governed by State and Federal laws and statutes. This Policy was developed in accordance with Title IX of the Education Amendments of 1972, the Violence Against Women Act, and the Campus Sexual Violence Elimination Act, as well as guidance issued by the United States Department of Education Office of Civil Rights. Additionally, policies from other institutions were reviewed including: Southern Illinois University Carbondale, University of Illinois [illegible] State University, University of Dayton, Saint Louis University, [illegible] University, University of North Carolina, [illegible] University of Michigan, Swarthmore College, Duke University, [illegible]

*Approved by Chancellor effective 7/27/16*
*This policy was issued on August 5, 2016.*
*This policy was edited on May 25, 2017, replacing the August 5, 2016 version.*
*Document References: 2C13 & 3C14*
*Origin: OC 7/14/15; OC 7/21/16*

No. 18-MR-

# Policies

Policies & Procedures

## Miscellaneous

Sexual Harassment Complaint Procedures - 2C5 & 3C4

Each member of the University community shares a common responsibility to maintain an environment free from all forms of sexual harassment, including sexual violence [1]. Individuals who have concerns about sexual harassment should seek assistance or advice. Individuals are not required to reveal their identity to seek advice, however, it may be necessary to reveal identity for the purpose of investigation. Members of the University community who have knowledge of such incidents should encourage victims of sexual harassment to consult with sexual harassment information advisors, if needed.

Southern Illinois University Edwardsville has adopted the following procedures to ensure compliance with the University Policy on Sexual Harassment.

I. Definition of Sexual Harassment

Definitions and examples of prohibited sexually harassing behaviors are found at 7. D. 1-4 of the Policies of the Board, the University Policy on Sexual Harassment.

II. Consensual Relationships

Consensual amorous or sexual relationships between faculty and students or between a supervisor and an employee may result in claims of sexual harassment, even when both parties appear to have consented to the relationship. The power differential inherent in such relationships may compromise the subordinate's free choice. When those in authority abuse or appear to abuse their power in a relationship, trust and respect in the University community are diminished. Moreover, others who believe they are treated/evaluated unfairly because of such a relationship may make claims of harassment.

Therefore, it is a violation of this policy if faculty members become involved in amorous or sexual relationships with students who are enrolled in their classes or subject to their supervision, even when both parties appear to have consented to the relationship. No faculty, staff, or graduate assistant shall become involved in an amorous relationship, consensual or otherwise, with a student for whom that person currently has any teaching responsibility, including counseling and advising, coaching, supervision of independent studies, research, theses, and dissertations. In all cases in which an amorous or sexual relationship exists or develops, it is the obligation of the faculty member, staff member, or graduate assistant whose University position carries the presumption of greater power to disclose the relationship immediately to the appropriate supervisor who will contact the Office of the Provost for assistance in avoiding an appearance of impropriety and a potential conflict of interest.

Additionally, it is a violation of this policy for a supervisor and a directly reporting employee to have a consensual amorous or sexual relationship with each other. In cases in which a consensual sexual or amorous relationship exists or develops between a supervisor and a directly reporting employee, it is the obligation of the supervisor to disclose the relationship immediately to his or her supervisor, who will contact the Office of the Provost or the Office of Equal Opportunity, Access and Title IX Coordination (EOA) for assistance in how to avoid an appearance of impropriety and a potential conflict of interest.

III. Sexually Explicit Materials

Sexually explicit materials in the workplace or learning environment that have no relationship to the curriculum can contribute to a sexually harassing environment for employees and students. Such materials can be in the form of music, documents, photographs, film or computer generated materials. A complaint of sexual harassment may include allegations of sexually explicit materials.

IV. Informal Complaint Procedures

Any student, employee, participant in a University sponsored activity or member of the public having contact with the University may utilize the following informal procedures, or may proceed directly to the formal procedures. However, for incidents involving allegations of sexual violence, informal procedures may not be used. A complaint may be filed against a student, employee, participant in a University sponsored activity or member of the public having contact with the University.

A. Complaints Received by Supervisors

1. Complainants are encouraged to seek assistance at the level of the lowest ranking supervisor or University official not related to the harassment. If a complaint, whether written or oral, is brought to the attention of a respondent's (Respondent is the person against whom a charge is brought) supervisor, department head, director, or dean, or to any of the vice chancellors or the chancellor, that official has the responsibility to take necessary action to attempt to resolve the complaint promptly. The official should consult with the EOA to determine the appropriate course of action.
2. Whenever a complaint is made, a written report of the incident, including the name of the respondent and the action(s) taken to resolve the complaint, must be submitted to the EOA. The supervisor, or other University official who receives a complaint, is responsible for taking reasonable action to prevent retaliation against complainants and/or other individuals involved in the investigation process.

B. Sexual Harassment Information Advisors

The University has designated a number of individuals to serve as information advisors on the subject of sexual harassment. Sexual harassment information advisors are individuals familiar with the University Policy on Sexual Harassment who can assist those who have concerns regarding sexual harassment. Complainants, respondents, witnesses, or supervisors of parties to a complaint may consult sexual harassment information advisors. Such consultation does not constitute a formal complaint or grievance. Sexual harassment information advisors can provide information regarding:

1. informal actions that might remedy the situation;
2. University policy on sexual harassment and procedures for resolving complaints;
3. applicable state and federal laws including procedures for filing charges with state and federal agencies, and law enforcement, if applicable.

No. 18-MR-

Exhibit Two

Page 44 of 48

Case 3:18-cv-01668 Document 1-1 Filed 08/30/18 Page 46 of 49 Page ID #49

[illegible]

[illegible]

[illegible]

[illegible]

Within three (3) working days of receipt of a complaint:

1. Meet with the complainant to obtain details [illegible] name of the complainant, the name of the respondent [illegible] any witnesses, and the remedy sought by the complainant.
2. Advise the complainant of the necessity of maintaining confidentiality [illegible]
3. Advise the complainant of his or her right [illegible]
4. Inform the complainant of his or her right to have a person of their choice, including an attorney, accompany them throughout the proceedings. However, the complainant is responsible for participating in the investigation process; any person chosen by the complainant to accompany him or her through the process may not speak or directly participate in the investigation, except to the extent that the person may be a witness.
5. Advise the complainant that retaliation for having made a complaint of sexual harassment is strictly forbidden by University policy.
6. Inform the complainant that interim measures may be available until the complaint is resolved. Interim measures may include, but are not limited to, alternate work assignments, changing sections of a class, completing class assignments with another instructor, or alternate living arrangements in the case of students residing on campus.
7. Advise the complainant of his or her right to present witnesses who have direct knowledge of the complaint.

B. Within five (5) working days of receipt of a complaint:

1. Meet with the respondent to notify him or her of the specific allegations.
2. Advise the respondent of due process options available.
3. Advise the respondent of the necessity of maintaining confidentiality to the extent possible throughout the investigation process.
4. Inform the respondent of his or her right to have a person of their choice, including an attorney, accompany them throughout the proceedings. However, the respondent is responsible for participating in the investigation process; any person chosen by the respondent to accompany him or her through the process may not speak or directly participate in the investigation, except to the extent that the person may be a witness.
5. Advise the respondent that retaliation against a complainant for having made a complaint of sexual harassment is strictly forbidden by University policy.
6. Allow the respondent five (5) working days to respond to the allegations.
7. Advise the respondent of his or her right to present witnesses who have direct knowledge of the complaint.
8. Notify the respondent's supervisor of the complaint, if applicable. In the case of faculty, the chairperson and the dean will be notified. In the case of other employees, the supervisor and the unit head will be notified.
9. In the event the respondent is a student, the Dean of Students will be notified and if the student is a student worker at the University, the appropriate supervisor will receive notification. If the student is a graduate assistant, the appropriate supervisor, the Dean of the Graduate School, and the Dean of the School/College in which the graduate assistant is enrolled will receive notification.
10. Inform the appropriate Vice Chancellor.

C. The EOA will interview witnesses and any other appropriate individuals to fully investigate the allegations of the complaint.

D. At all stages of this process, the EOA will assess whether a resolution is possible and attempt to resolve the complaint in the least disruptive, prompt and confidential manner. This ongoing assessment will include a consideration of whether mediation [Mediation is a process where the parties in disagreement resolve their differences by agreement with the assistance of an impartial mediator who facilitates a resolution in a private and confidential setting] could be beneficial and, if the EOA believes that mediation could successfully resolve the complaint, the complainant and respondent will be offered the opportunity to mediate. Mediation will not be offered in cases alleging any form of sexual violence.

E. The EOA will assess whether interim measures are appropriate and make a recommendation for implementation of such measures to the appropriate University personnel.

F. The complainant and the respondent will have opportunities to present information, rebut evidence and present witnesses to the EOA.

G. Within thirty (30) working days of receipt of a complaint, the EOA will determine whether the Sexual Harassment Policy has been violated, make a written report of the findings and conclusions of the EOA and notify the complainant and respondent of the results of the investigation.

H. In cases where the respondent is an employee, the EOA will notify the respondent's supervisor that the investigation is complete, and if a violation has occurred, will make recommendations for appropriate discipline according to Section X of this policy. Those who were originally notified of the complaint will receive a copy of the written report.

I. In cases where the respondent is a student and where the EOA finds that the Sexual Harassment Policy was violated, within thirty (30) working days of receipt of a complaint, the EOA will notify the Dean of Students that a violation has occurred and will make a recommendation for appropriate discipline according to Section X of this policy. If the student is a graduate assistant or student worker, the appropriate supervisor and the Dean will receive notification. Those who were originally notified of the complaint will receive a copy of the written report.

J. Between the time the written report is given to the appropriate supervisor/Dean and when discipline is imposed, there shall be no *ex parte* communications between the supervisor/Dean and any of the parties or witnesses to the complaint. After discipline is imposed, the complainant and the respondent shall receive a copy of the written report.

Within five (5) working days of notification of the results of the investigation, either the complainant or respondent may notify the EOA of his or her wish to appeal the determination as to whether the Sexual Harassment Policy was violated. Where the appealing party is the respondent, he or she shall indicate whether he or she will appeal to the Sexual Harassment Panel, or through any applicable civil service procedures, collective bargaining or student conduct codes. This choice by the respondent will constitute respondent's exclusive avenue of appeal. Where the respondent elects civil service, collective bargaining or student conduct code procedures, the EOA shall forward the report to appropriate University personnel pursuant to the applicable procedure. Where the complainant appeals or the respondent elects to appeal to the Sexual Harassment Panel, within three (3) working days of receipt of the notice of appeal, the EOA shall initiate the appeal process.

A complainant may also seek relief by making a confidential report to the Equal Employment Opportunity Commission (1222 Spruce, Room 8.100, St. Louis, MO 63103); the U.S. Department of Education, Office for Civil Rights - Chicago Office (500 W. Madison Street, Suite 1475, Chicago, IL 60661); the State of Illinois Department of Human Rights (222 South College, Room 101A, Springfield, IL 62704).

No. 18-MR-

Page 45 of 48

Case 3:18-cv-01668 Document 1-1 Filed 08/30/18 Page 47 of 49 Page ID #50

[illegible] Office of the Executive Inspector General for the Agencies of the [illegible]

[illegible]

A. Sexual Harassment Panel

[illegible] Appeal by either respondent or complainant [illegible] conducted by the EOA [illegible]

The Sexual Harassment Panel shall be drawn from a [illegible] pool of [illegible] functional areas governed by the Vice Chancellors. Functional area heads will [illegible] to the EOA, which will forward the [illegible] to the Chancellor. The twelve members of the Pool will be approved by the Chancellor on the basis of ability to maintain objectivity and confidentiality, and to attend training. The Sexual Harassment Panel Pool shall include representatives from faculty, professional staff, and civil service and shall include both males and females and represent additional diversity.

A Sexual Harassment Panel shall be composed of three members of the Sexual Harassment Panel Pool. None of the three panel members shall be drawn from the same school, college, or other reporting area as either the complainant or the respondent. Within three (3) working days of receipt of the notice of appeal, the EOA shall select the three members of the Sexual Harassment Panel, taking into account such factors as the nature of the complaint, the prior experience and availability of the eligible members of the Pool, and equitable gender representation on the Panel. Each member of the Panel will be provided with a copy of the EOA report.

B. Procedures for Appeal

The Sexual Harassment Panel will proceed as follows.

1. Within seven (7) working days of receipt of the report from the EOA, convene to review and discuss the report and schedule a date for a hearing.
2. Within seven (7) working days of receipt of the report from the EOA, advise the complainant and respondent of the date of the hearing and their right to have an advisor of their choice, including an attorney, present throughout the hearings. However, complainant and respondent are responsible for presenting their own cases, an advisor may not speak or participate directly in any hearing, except to the extent that the person may be a witness.
3. Within ten (10) working days of receipt of the report, schedule a hearing to allow the complainant and respondent the opportunity to present information, rebut evidence, and present witnesses. In cases involving allegations of sexual violence, respondents will not be allowed to directly question complainants, and questions shall be provided to the Panel Chair for presentation.
4. Allow the complainant and the respondent to remain present during the entire hearing. In cases involving allegations of sexual violence complainants will not be required to have face-to-face contact with respondents.
5. Within ten (10) working days of the conclusion of the hearing, determine whether the Sexual Harassment Policy has been violated and prepare a written report of the Panel's findings, conclusions and any recommendations for sanctions.
6. Within ten (10) working days of the conclusion of the hearing, forward a copy of the Panel's report to the complainant, respondent, and the EOA.
7. If the Panel makes a finding that the Sexual Harassment Policy was violated, the EOA will forward a copy of the Panel's report, including recommendations for sanctions, to the appropriate University personnel for implementation.
8. Within ten (10) working days of receipt of the Panel's report and recommendations, the appropriate University personnel will impose sanctions as deemed appropriate.

C. Appeal from Sexual Harassment Panel Findings

Within five (5) working days of receipt of the Sexual Harassment Panel's report, either the respondent or complainant may provide written notice of appeal to the Office of the Chancellor. The Chancellor will review the record and either uphold or reverse the decision being appealed within ten (10) working days of receipt of the appeal.

VII. Confidentiality

All parties involved in the complaint, investigation and appeal processes are obligated to protect the privacy of all persons involved. The University will take reasonable steps to ensure confidentiality, however, confidentiality cannot be guaranteed.

A confidential record of the complaint and any reports shall be maintained by the EOA. The record will contain all documentation on the sexual harassment complaint, actions taken, and the nature of the resolution. The file may be reviewed by legal counsel or the Office of Human Resources to ensure full compliance with legal requirements and observance of the rights of all parties involved.

VIII. Exclusive Remedy

The procedures set forth in this Policy shall be the exclusive remedy at the University level available to any person complaining of sexual harassment, with the exception of complaints of sexual violence or other criminal matters handled by law enforcement. This policy and related procedures do not apply to complaints of discrimination with respect to other protected categories. Complaints alleging discrimination and harassment are covered in the University's Non-Discrimination and Non-Harassment Policy and Procedures. The right of a person to prompt resolution of a complaint filed under this procedure shall not be impaired by the person's pursuit of remedies outside the University. Use of this procedure is not a prerequisite to the pursuit of other remedies. Individuals should be aware that the deadlines for filing a charge with the Illinois Department of Human Rights and with the federal Equal Employment Opportunity Commission are no later than 180 and 300 days, respectively, following the alleged act of sexual harassment.

IX. Substantial Compliance

Substantial compliance with these procedures shall be deemed full compliance if the party challenging the procedures has suffered no substantial harm caused by the actual procedure used.

X. Sanctions

A. Employees and Other Individuals

If there is a finding of sexual harassment against a University employee or another individual, the University may impose sanctions including, but not limited to:

1. Apology to the victim
2. Advice and counseling
3. Required attendance at sexual harassment training
4. Written warning
5. Letter of reprimand
6. Removal of sexually explicit material
7. Required attendance at substance abuse training if substance abuse was involved
8. Loss of travel dollars
9. Loss of choice assignments

VP-18-MR-

Page 46 of 48

10. Change of job or class assignment
11. Suspension, probation, termination
12. Loss of access to the University

B. Students

If there is a finding of sexual harassment against a student or student group, the University may impose sanctions including, but not limited to:

1. Apology to the victim
2. Written warning
3. Letter of reprimand
4. Removal of sexually explicit material
5. Prohibiting students from holding office or participating in activities such as sports events for a specified time
6. Transferring the student to another class or job
7. Disbanding or suspending a social organization or other student group involved in sexual harassment
8. Transferring students to different housing or prohibiting them from living in institutional housing facilities
9. Requiring attendance at substance abuse training, if substance abuse was involved
10. Requiring relevant community service
11. Requiring perpetrators to attend workshops on peer harassment
12. Loss of student worker position or graduate assistantship
13. Suspension, probation, dismissal or expulsion

XI. Retaliation

Retaliation against a student or an employee who complains of sexual harassment, or who participates in an investigation of a complaint, is prohibited. Retaliation is prohibited by University regulation, state and federal law and can lead to disciplinary action independent of the sexual harassment allegations.

In addition to the provisions of this Policy, individuals who believe that they have been subject to retaliation for reporting sexual harassment allegations may seek whistleblower protections under the Illinois State Officials and Employees Ethics Act (5 ILCS 430/), the Illinois Whistleblower Act (740 ILCS 174/), and the Illinois Human Rights Act (775 ILCS 5/).

XII. Frivolous or Malicious Charges

These procedures shall not be used to bring frivolous or malicious charges against fellow students, faculty or staff members. Disciplinary action under the appropriate University policies or procedures for students, faculty, and staff shall be taken against any employee or student bringing a frivolous or malicious charge of sexual harassment.

XIII. Education and Training

Education and training for the University community is necessary to ensure individual personal safety and to protect the integrity of the University. All administrators and supervisors must complete training on sexual harassment. The Sexual Harassment Panel Pool and Sexual Harassment Advisors shall also complete the training.

Annual sexual harassment education and training will occur to update and review sexual harassment issues.

[1] Use of the term "sexual harassment" throughout this document includes sexual violence unless otherwise noted. A number of acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion.

Appendix A

Campus Sexual Harassment Advisors

| Building | Advisor |
|---|---|
| Alton Campus | [illegible] |
| Alumni Hall | Natasha Smith |
| Art and Design Building | [illegible] |
| Birger Hall | [illegible] |
| Cougar Village | Vicky Dean |
| Counseling Services | [illegible] |
| Dunham Hall, Kathryn | [illegible] |
| Early Childhood Center | Christy Horton |
| East Saint Louis Center | [illegible] |
| Engineering Building | [illegible] |
| Founders Hall | Amanda Russell |
| Lovejoy Library | [illegible] |
| Morris University Center, Delyte W. | Kelly Jo Karnes |
| National Corn-to-Ethanol Research Center | John Caupert |
| Peck Hall | |
| Rendleman Hall | Richard Walker |
| School of Pharmacy | [illegible] |
| Science Building | [illegible] |
| Student Fitness Center | [illegible] |
| Student Success Center | [illegible] |
| Supporting Services | [illegible] |
| University Housing | |
| Bluff Residence Hall | [illegible] |

No. 18-MR-

Page 47 of 48

5/14/2018 Policies & Procedures - Miscellaneous - Sexual Harassment Complaint Procedures - 2C5 & 3C4

| | |
|---|---|
| Evergreen Residence Hall | [illegible] |
| Prairie Residence Hall | [illegible] |
| Woodland Residence Hall | Rex Jackson |
| University Park | John Caupert |
| Vadalabene Center | [illegible] |

[Return back to referring text within the policy]

Appendix B

EOA Complaint Form PDF

*Approved by Chancellor effective 2/2/18*
*This policy was issued on February 2, 2018, replacing the June 16, 2016 version*
*Document References: 2C5 & 3C4*
*Origin: OP 4/9/96; OC 9/1/98; OC 1/18/01; OC 7/1/05; OC 2/5/07; OC 11/18/11; OC 2/2/18*

Contact SIUE · Illinois Board of Higher Education

- Future Students
- Current Students
- Faculty & Staff
- Alumni
- Business Partners
- Parents
- Community
- Veterans

No. 18-MR-

page 48 of 48

http://www.siue.edu/policies/2c5.shtml 5/5