UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| L M, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-cv-01668-NJR-GCS |
| | ) |
| SOUTHERN ILLINOIS UNIVERSITY, | ) |
| at EDWARDSVILLE (SIUE) and | ) |
| RANDALL G. PEMBROOK, in his | ) |
| Official Capacity as | ) |
| Chancellor of SIUE, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON THE IMPACT OF THE SEVENTH CIRCUIT'S DECISION IN DOE V. PURDUE UNIVERSITY**

NOW COMES the Plaintiff, L M, by counsel, Eric M. Rhein, and for his Supplemental Brief on the impact of the Seventh's Circuit's decision in Doe v. Purdue University, 928 F.3d 652 (7th Cir. June 28, 2019) (slip op.), states as follows:

**I. INTRODUCTORY OBSERVATIONS**

Counsel appreciates the opportunity to comment on the impact of this important Seventh Circuit opinion (decided June 28, 2019) in Doe v. Purdue University. Campus due process and Title IX issues relating to the conduct of state school campus sex harassment and/or assault panels is a fast changing area of the law, and the trend of expanding or recognizing the rights of the accused students was furthered by the decision of the three

Page 1 of 13

person panel of our Court of Appeals. In no way are the case's holdings a "win" for SIUE.

Much of what the District Judge St. Eve decided in Doe v. Columbia College, 299 F. Supp. 939 (N. D. Ill. 2017), a case the Defendants cited here for dismissal of the Title IX counts, is no longer good law, after Justice St. Eve had the authority to in effect overrule it. She did.

## II. DOE V. PURDUE AND HOW IT APPLIES TO PLAINTIFF'S CLAIMS

Doe claimed that his due process and Title IX rights were violated by a state university when he was suspended for a year from college and booted out of the school ROTC program after being found guilty of sexually groping a female student, a student who never testified.

The Seventh Circuit found that Doe had adequately stated claims for violation of his civil rights and Title IX rights when he was forced to testify and be questioned at a panel hearing (much like L M was forced to do), when the alleged victim was not questioned at all by the panel, when the Panel did not require the alleged victim to appear and testify under oath at the hearing, when the alleged victim did not even have to give the Panel her written version of events (of a sexual encounter similar to what C M alleged, e.g., drunken sex at an off campus apartment, with no criminal charge made and no professional

investigation being conducted.)

Doe also alleged that he was never provided the state's alleged evidence against him (until - a few minutes before the start of his Panel hearing - when an ROTC officer showed him a redacted investigative report, one in which the investigator falsely claimed that the accused student had confessed to the truth of the alleged victim's allegations).

Like L M has alleged, Doe alleged that the complainant and he had a prior sexual relationship, in which they had had sex fifteen to twenty times during the period October, 2015 until December, 2015. When she got around to complaining about Doe's conduct, during the April of 2016 on campus "Sexual Assault Awareness Month," "Jane" alleged that he had groped her through her clothing while the couple was sleeping together. Doe denied that occurred. Purdue then pursued her complaint, even though the alleged victim never filed one.

Doe was suspended, just based on the school's letter alleging that he was guilty of a sex assault, from the Navy ROTC program.

Doe - like L M - also alleged that the Panel ignored evidence of behavior of the claimed victim which was inconsistent with the behavior of a real victim of a sexual assault (e.g., Jane continued to text him after November of 2015, she spoke with

him over the December, 2015 holidays, she sent his family homemade cookies, and she invited him to her room when school resumed in January of 2016). The Panel also ignored real evidence Doe claimed to have of mental instability of Jane, including ignoring evidence that she had attempted suicide.

Like L M, Doe was forced to attend, testify and be cross-examined live at the Panel hearing. Like L M, Doe never had the chance to truly cross-examine the claimed victim. But like in Doe, L M was forced to submit to live questioning by the Panel, C M, and C M's advisor (who was not a lawyer). L M just wanted to be treated the same as the person of the opposite sex who testified against him.

Predictably, like the Seventh Circuit wrote, the hearing "did not go well for John [Doe]." *Id.* at 5. That is an understatement.

Doe alleged he lost the chance for a Naval officer career as a result of the erroneous and false panel finding that the Panel was crediting the "word" of an accuser who had never even submitted a written statement to the Panel of what she claimed happened to her.

The court found that two of the three Panel members admitted to not having even bothered to have read the Title IX Investigation report. The member who had (of course) assumed

guilt and cross-examined Doe as if he already had been found guilty (cross-examining him live, just like L M's representative wanted to do with C M). John was unable to see the evidence in advance (like L M, who can now allege in an Amended Complaint that the school suppressed - until its discovery compliance in this case - an internal campus email that documented that C M did not wish to be subject to any questioning by any police officer, unusual evidence of non-cooperation from an alleged rape victim.)

The court also significantly found that the Panel refused to allow John to submit real evidence of innocence (an alleged eyewitness who was present in the room when the alleged victim claimed she had been groped), refused to allow him to present evidence of Jane's inconsistent and impeaching conduct, and refused to allow him to submit evidence of his law abiding and good, non-violent character.

The appeals court reversed the dismissal of John's Section 1983 claim (for expungement), and also reversed the dismissal of John's Title IX count. Simply put, the state university lost the Doe appeal, and the aggrieved student now has the chance to engage in discovery and go to trial.

First, as to the plaintiff's standing to bring a 1983 due process denial count, the Court held that Doe's allegations

established standing. His allegation that he has lost a Naval career carried the day for him. Like <u>Doe</u>, L M (see pages 24 and 25 of Count III of his Complaint) has alleged real harms to his life as a result of SIUE's egregious actions:

-L M has wrongfully been labeled a rapist by Defendants, harming his reputation permanently (paragraphs A and G of Count III);

-L M was forced by the school to graduate early, after three years on campus, when he wanted to put in another year (paragraph B); had he not been suspended for one year, he would have had the chance to complete another two semesters worth of undergrad credits, which would have made him more attractive or marketable to graduate schools (paragraph D);

-L M was forced to start a graduate program at a school he'd rather not attend, in order to keep a third party granted scholarship (paragraphs C & D);

-L M was forced by Defendants to lose out on a fourth and final year of FASFA funding of college (paragraph E);

-L M lost out on fourth year college scholarships (paragraph F);

-L M was forced to forfeit his long time and good association with the student Housing Department (paragraph H). In short, L M - like John Doe - has adequately pleaded a liberty

or property interest to establish Section 1983 standing to have the guilty finding vacated and his record expunged. But Plaintiff concedes that he should amend to make a plain statement of facts establishing standing in Counts I and II.

The Seventh Circuit, at page 12 of <u>Doe</u>, cites <u>Townsend v. Vallas</u>, 256 F.3d 661, 670 (7th Cir. 2001) for the proposition that "Liberty interests are impinged when someone's 'good name, reputation, honor or integrity [are] called into question in a manner that makes it virtually impossible for . . . [him] to find new employment in his chosen field.'"

The <u>Doe</u> Justices found that Purdue utilized fundamentally unfair procedures in its Title IX action against the accused, and applied a context-based analysis of the process which is due, holding that the more severe the accusation of misconduct or the more severe the potential penalties involved, the more formalized due process rights the accused student must receive. Page 16. And the court found that Purdue's "rights" offered Doe fell short of what the court had previously ruled that even a high school must give an accused student in attempting to suspend. Page 17. In light of that fact, one would think that the court would have also found that Doe's human defendants were not entitled to qualified immunity, but they did.

The "hearing must be a real one, not a sham or pretense."

Page 7 of 13

*Id.* In "he said/she said" disputes like the ones in Doe and in L M v. SIUE, the court held that the school's "failure to even question Jane or John's roommate to probe whether this evidence [of inconsistent conduct of Jane] was reason to disbelieve Jane was fundamentally unfair to John." Doe at 17 - 18. Also, this: "[The Title IX investigator] and the Advisory Committee's failure to make any attempt to examine Jane's credibility is all the more troubling because John identified specific impeachment evidence," evidence L M's counsel would have presented to the hearing Panel, had he been allowed to speak. (That evidence is described in L M's suit). *Id.* at 18.

The above language in the opinion is key, and it frankly contradicts this dicta in footnote 4: "Citing a recent case form the Sixth Circuit, John also argues that he was entitled to cross-examine Jane. See Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018). Because John has otherwise alleged procedural deficiencies sufficient to survive a motion to dismiss, we need not address this issue." Doe v. Purdue at 18. (Plaintiff L M has also cited the Baum case to this court).

But the Justices DID address it. They found that the failure of anyone to question the alleged victim was a denial of due process.

And of course the trend in the authority is to give accused

students in serious cases the right to cross-examine the witnesses, especially in he said/she said situations.

The Doe court, on page 8 of that decision, described the process failures Doe alleged, and among them was the fact that "he had no opportunity to cross-examine Jane."

The court held, at page 16, that "John's circumstances entitled him to relatively formal procedures," procedures L M's suit also alleges in detail, procedures that L M, accused of rape (and not just groping someone) undoubtedly deserved, but which SIUE ignored.

In another significant holding, favorable to L M and not to SIUE, is that Doe could seek injunctive relief in order to have the trial court expunge the campus guilty finding, should he win at trial. Id. At 22 - 23. L M will also allege the need to expunge his suspension and guilty finding from his official records at SIUE, because if a potential grad school or employer asks him on an application if he has ever been found guilty of assault, to tell the truth, he would be forced to disclose what happened to him in SIUE's Panel process. And the only way he can give an honest "no" answer to that question would be if he wins this case and obtains an expungement order from the District Court.

The Doe court, however, did not issued a comprehensive

"Miranda" type of listing of all the procedural rights state schools must give accused Title IX students, rights which L M argues that he should have been afforded, like a presumption of innocence, a clear and convincing standard of proof, the burden of proof on the school or complainant, the right not to testify, the right to - through a third party like an attorney - cross-examine the witnesses against him, etc.  Instead, Doe gives future accused students the right to notice of the charges in advance, the right to be heard, the right to have someone question the alleged victim effectively, and the right to examine the state's/school's evidence in advance.  Like John Doe, the only evidence L M got to see in advance was the Title IX investigator's report.  Incidentally, L M will allege that the Panel allowed C M to submit alleged medical evidence after the hearing was concluded, and after the time for the Panel to deign to ask written questions submitted by L M's counsel.  John Doe also did not raise the argument L M has raised: the lack of any legal authority for a state university to punish off campus actions that the criminal justice system can punish.

    Doe outright reverses Judge Posner in the Osteen case, and that reversal was well deserved.  Osteen, cited repeatedly by the Defendants in this case, is no longer good law.

As to the Title IX part of the Doe decision, the court significantly held that Doe adequately alleged that "his sex was a motivating factor" in the school's discipline of him. Page 25.

All Doe and subsequent plaintiffs have to allege in Title IX violation counts are facts which "raise a plausible inference" that the university discriminated against John "on the basis of sex." Page 25. Plaintiff L M has asked for leave to amend his Title IX counts after the court rules on the Motion to Dismiss Counts I, II and XI.

Finally, the court addressed the relevance of the 2011 federal "Dear Colleague" letter in these cases. The court ruled that while admissible and relevant, the Letter itself cannot be the sole ground for a plaintiff to claim that his or her Title IX rights were violated. See p. 26 - 29. The Letter itself is thus not outcome determinative. But the jury the defense has demanded should read it.

Doe described what made John's allegations sufficient: like in the case at bar, John's case was a he said/she said case; the school had no real basis to credit the story they said Jane had told over the accused live and cross-examined version of events (like L M alleges that SIUE had no basis to

believe a "rape" victim who stated that she voluntarily had anal sex with L M after he supposedly raped her twice) (it's interesting that while Jane was not questioned at all, just like C M was not effectively cross-examined at all, John Doe was questioned by a panel member in an accusatory manner); the Panel likely credited Jane over John because of her gender; the Panel showed their bias against John by not permitting him to question Jane or call her, by disallowing John from calling an actual eye witness to the encounter, and by not permitting him to point out very telling inconsistent, impeaching conduct on Jane's part, behaviors not consistent with how a person who knew or believed they had been raped would act; the Panel showed its hostility to John by inquisitorially calling him first in their "case"; and the Panel ignored his evidence that Jane had serious mental health issues. P. 29.

The bottom line is that "it is plausible that [the Panel] chose to believe Jane because she is a woman and to disbelieve John because he is a man." Id.

In conclusion, what happened to Doe was egregious, but just slightly more egregious than how SIUE treated L M. And the Seventh Circuit has taken an important step in improving the basic fairness of these sex assault panels.

The Motion to Dismiss counts I, II and XI should be denied, with the court dismissing the money damages civil rights claim in Count III, and with the court allowing L M leave to amend to state his standing allegations more specifically in Counts I and II, and to re-plead his Title IX counts IV and V.

> Respectfully submitted,
>
> /s/ Eric M. Rhein
> Eric M. Rhein, #06186203
> Attorney for Plaintiff
> 6897 West Main Street
> Belleville, IL 62223
> Telephone: 618-394-9230
> Fax: 618-394-9404
> ericrhein@icloud.com

PROOF OF SERVICE

I hereby certify that on July 29, 2019, a true and correct copy of the foregoing document was electronically served on counsel for Defendants via the United States District Court for the Southern District of Illinois' CM/ECF electronic filing system and via electronic mail upon the following:

Ms. Katherine L. Nash
Mr. Ian P. Cooper
Mr. Adam C. Henningsen
34 N. Meramec Avenue, Suite 600
St. Louis, MO 63105
knash@tuethkeeney.com
icooper@tuethkeeney.com
ahenningsen@tuethkeeney.com

> /s/ Eric M. Rhein